[11 NE3d 177, 988 NYS2d 104]

The People of the State of New York, Respondent, v Merlin G. Sage, Appellant.

Argued February 11, 2014; decided April 1, 2014

## POINTS OF COUNSEL

*Timothy P. Donaher, Public Defender*, Rochester (*Drew R. Du-Brin* of counsel), for appellant. The trial court erred by refusing to submit to the jury the questions of whether the People's key witness was an accomplice and, if so, whether his testimony was corroborated. (*People v Vataj*, 121 AD2d 756, 69 NY2d 985; *People v Dorler*, 53 NY2d 831; *People v Diaz*, 19 NY2d 547; *People v Werner*, 55 AD2d 317; *People v Crimmins*, 36 NY2d 230; *People v Berger*, 52 NY2d 214; *People v Sweet*, 78 NY2d 263; *People v Cona*, 49 NY2d 26; *People v Jones*, 73 NY2d 902; *People v Basch*, 36 NY2d 154.)

*Sandra Doorley, District Attorney*, Rochester (*Matthew Dunham* of counsel), for respondent. Defendant was not entitled to have the jury instructed to consider whether one of the People's witnesses was an accomplice and, if so, whether his testimony was corroborated. (*People v Beaudet*, 32 NY2d 371; *People v Wheatman*, 31 NY2d 12; *People v White*, 26 NY2d 276; *People v Jones*, 73 NY2d 902; *People v Sweet*, 78 NY2d 263; *People v McKenzie*, 19 NY3d 463; *People v Basch*, 36 NY2d 154; *People v Garcia*, 20 NY3d 317; *People v Evans*, 83 NY2d 934; *People v Dorler*, 53 NY2d 831.)

## OPINION OF THE COURT

RIVERA, J.

The sole issue on this appeal arising from the defendant's conviction for manslaughter in the first degree is whether the trial court committed reversible error by failing to charge the jury with an "accomplice-in-fact" instruction for the People's key witness. We conclude that the evidence created a factual issue as to whether the witness was an accomplice and that the failure to instruct the jury was not harmless. The order of the Appellate Division should be reversed.

### I.

The defendant was charged by Monroe County indictment with murder in the second degree (*see* Penal Law § 125.25 [1]), stemming from the early-morning beating of Hector Merced on November 17, 2007. The People presented physical and testimonial evidence at trial seeking to establish that the defendant caused the death of Merced when he, along with two other men, viciously beat Merced, and shortly thereafter, on his own, forcefully struck him multiple times with a mop handle. The defendant disputed his involvement in the beating death of Merced

and sought to impugn the testimony of the People's key eyewitness, Andrew Mogavero, casting him as an accomplice to the crime.

At trial, Mogavero presented a story of how he observed, but did not participate in, the entire series of attacks on Merced that eventually led to his death. He testified that on the night of the murder he had gone out drinking with the defendant and Damion Clarke when they met Merced at a bar.[1] Thereafter, they all left to go drink at the apartment of Miguel Velez, an acquaintance of the defendant. According to Mogavero, within 20 minutes of arriving at the apartment, Clarke and Merced got into a "heated argument." Clarke took off his shirt, yelled "[e]nough of the disrespect," and head-butted Merced. Mogavero claimed that he had come back from the bathroom just in time to witness the incident and that he did not know why the men were fighting. Mogavero then claimed that Merced "came at me aggressively." Mogavero punched Merced twice to protect himself, hitting Merced in the face and neck.

Mogavero testified that the beating of Merced then began in earnest, with the defendant, Clarke and Velez kicking and punching Merced. At some point Merced fell to the floor and the defendant, Clarke and Velez continued to punch and kick him, inflicting blows around the head and body. During the beating Mogavero saw Clarke jump and land on Merced's head with both feet and then hit him on the head with a large stereo speaker. Mogavero further testified that he observed Clarke try to defecate on Merced before the defendant urinated on him. According to Mogavero, Merced moved very little and did not attempt to get up.

Mogavero denied participation in the beating, claiming he only punched Merced twice at the beginning, and then he backed up and kept out of it because he did not want the others to turn on him. He testified that he decided to get Merced out of the apartment once the others had stopped beating him. Mogavero testified that he picked Merced up off the floor and, along with Velez, carried him across the street and placed his body on the porch of a neighbor's house, which was under renovation. Mogavero claimed that, as they carried Merced to the porch, he was bleeding from his head and face and that he slumped over when they left him seated on the porch.

Mogavero testified that he watched the defendant walk toward the porch, and strike Merced forcefully with a mop handle.

---

1. Clarke was also indicted for the murder and tried separately.

He testified that he saw the defendant swing the handle at Merced's head and neck three times "[l]ike a baseball bat." Mogavero claimed that he walked back to the porch and tried to stop the defendant, describing how he "kind of grabbed [the defendant]" by the shirt to "kind of pull[ ] him back" from Merced.

According to Mogavero, he and the defendant left the scene of the beating by separate routes and went to the defendant's home, which was a short distance away. As soon as he arrived there, Mogavero changed out of his clothes because they were stained with Merced's blood, placed the clothes in a garbage bag, and left them in a bedroom. He then "[j]ust hung out" at the defendant's home for a couple of hours, eventually falling asleep.

On cross-examination, the defense pointed to various inconsistencies between Mogavero's in-court testimony and his previous statement to the police made the day after the beating. Defense counsel elicited from Mogavero that his written and signed statement only indicated that the defendant had urinated on Merced, and made no mention of the defendant punching or kicking him. Mogavero attempted to explain this inconsistency by claiming that he had told the police that the defendant kicked and punched Merced, but that he did not realize that the written statement was incomplete until he testified at the grand jury a few days after the murder. On cross-examination he also admitted that the beating took place in a small living room space and that he was "[a] matter of feet" away from the beating but did not intervene. Mogavero further admitted that although his mother lived four streets away from the defendant's home, he did not go there after he left the scene of the beating.

The People's forensic pathologist testified that the victim died of a subarachnoid hemorrhage, which he opined can be caused by blunt force trauma to the head and neck, such as punches, kicks, stomping, and the throwing of objects directly onto the head. However, he could not testify as to which of the many blows caused Merced's death given the multiple blows inflicted on Merced. On cross-examination, he testified that a single blow to the head could cause a subarachnoid hemorrhage.

The People also offered into evidence the damaged mop handle and pieces of the mop discovered near Merced's body on the porch. The evidence established that Merced's blood was on the

mop handle and pieces. Defendant's fingerprint was one of five recovered from the mop handle, and it was the only recovered fingerprint that allowed for a match to be made.

The People also read and submitted into evidence a written statement made by the defendant to the police approximately two days after the murder, wherein he described going out with the men and eventually going to the apartment. He denied participating in the beating and claimed that he had carried Merced out of the apartment, but did not see how Merced made it to the porch. He stated that he found a mop nearby and poked Merced with the mop handle three or four times and yelled at him to see "if he was all right." In his statement the defendant described how Clarke had beaten, jumped on, and thrown the speaker on Merced. Defendant related that Clarke tried to defecate on Merced and told the defendant to urinate on Merced, which he did. The statement confirmed that Mogavero was with the defendant and the other men throughout the evening and at the apartment during the beating, that Mogavero had run to the defendant's house shortly after the attack, that the day after the beating Clarke went to the defendant's home where he told the defendant and Mogavero that Merced was dead and that he was going to go into hiding, that he advised them both to do the same, and that Mogavero then left the defendant's home. The investigator who authenticated the statement testified that he asked the defendant about Mogavero and that the defendant told him "he never saw [Mogavero] do anything" to Merced. The defendant did not testify or call any witness in his defense.

At the charge conference, defense counsel requested an "accomplice as a question of fact" jury instruction with respect to Mogavero, arguing that Mogavero's testimony, in conjunction with the testimony of the People's expert concerning the possibility that a subarachnoid hemorrhage could be caused by one punch, raised a question of fact as to Mogavero's involvement in the crime. Counsel argued that the jury should be able to consider Mogavero's possible involvement as an accomplice when determining his credibility as a witness for the People. The People opposed the request, arguing, inter alia, that there was insufficient evidence that Mogavero had acted as an accomplice to the murder, and that Mogavero did not receive a benefit

for testifying.[2] County Court denied the defendant's request. The jury thereafter acquitted the defendant of the murder charge, but found him guilty of the lesser included offense of manslaughter in the first degree.[3]

As relevant here, the Appellate Division affirmed the conviction, concluding that the trial court had properly determined that Mogavero could not reasonably be considered to have participated in the crime, and that there was overwhelming evidence corroborating his testimony (98 AD3d 1254 [2012]). The defendant appeals pursuant to leave granted by a Judge of this Court (21 NY3d 914 [2013]).

## II.

The defendant argues on appeal that the trial court erred by not submitting to the jury the question of whether the People's key witness, Mogavero, was an accomplice, and, if so, whether his testimony was sufficiently corroborated. The defendant contends that, viewed in his favor, the evidence reasonably demonstrates that Mogavero participated in the crime or in another offense based upon the same conduct constituting the crime, such as manslaughter in the first or second degree, intentional assault, reckless assault, or criminally negligent homicide.[4] The defendant further argues that failure to submit the accomplice in fact charge is necessarily harmful, but regardless, the evidence of corroboration was not so overwhelming, and the proof of guilt was not so strong, that there is no significant probability that the verdict would have been different had the jury been properly charged. In this regard, the defendant contends that there is a significant probability that the trial court's failure to submit the instruction contributed to the verdict.

The People assert that the defendant raises a mixed question of law and fact, over which we have limited powers of review. On the merits, the People argue that there is no reasonable view of the evidence that Mogavero was an accomplice. Alternatively, they

---

**2.** The People's reference to a lack of benefit appears to be in response to the Criminal Jury Instruction "Accomplice As A Question of Fact," which states that "[o]ur law is especially concerned about the testimony of an accomplice who implicates another in the commission of a crime, particularly when the accomplice has received, expects, or hopes for a benefit in return for testimony" (CJI2d[NY] Accomplice As A Question of Fact).

**3.** The People had requested the lesser included offense instruction during the charge conference (*see generally* Penal Law § 125.20 [1]).

**4.** *See* Penal Law §§ 125.20, 125.15, 125.10, 120.00.

claim that the trial court's alleged failure to issue the requested instruction was harmless.

## III.

An accomplice is "a witness in a criminal action who, according to the evidence adduced in such action, may reasonably be considered to have participated in: (a) [t]he offense charged; or (b) [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged" (CPL 60.22 [2]). Under our criminal law, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). Testimony of such a witness, marked by obvious self-interest, carries the potential for falsification to avoid prosecution (*People v Sweet*, 78 NY2d 263, 267 [1991] ["The law recognizes that accomplice testimony is inherently untrustworthy because those charged with a crime often seek to escape the consequences and curry favor with officials by implicating others"]; *People v Berger*, 52 NY2d 214, 219 [1981] ["Courts have thus exercised the utmost caution in dealing with accomplice testimony, especially when the testimony is exchanged for immunity or other favorable prosecutorial consideration"]; *People v Cona*, 49 NY2d 26, 35-36 [1979] ["The accomplice corroboration rule is premised upon a legislative determination that the testimony of individuals who may themselves be criminally liable is inherently suspect. This is deemed to be true because such individuals may be subject to pressures impelling them to color testimony in order to protect themselves by belittling the actual extent of their involvement in the criminal enterprise at the expense of others"]). Indeed, "[t]he common law traditionally has viewed criminal accomplice testimony with a 'suspicious eye' " (Peter Preiser, Practice Commentaries, McKinney's Cons Laws of NY, CPL 60.22).

Where the court determines on the evidence that a witness comes within the meaning of CPL 60.22 (2), the witness is an accomplice as a matter of law, and the court must instruct the jury that the witness is an accomplice and subject to the statutory corroboration requirement (*see Sweet*, 78 NY2d at 268; *People v Minarich*, 46 NY2d 970, 971 [1979]; *People v Beaudet*, 32 NY2d 371, 378 [1973]; *People v Jenner*, 29 NY2d 695 [1971]; *see also* CJI2d[NY] Accomplice As A Matter of Law [rev Jan. 2011], available at http://www.nycourts.gov/judges/cji/1-General/

CJI2d.Accomplice_law.pdf [accessed Mar. 9, 2014] ["Under our law, (the witness) is an accomplice because there is evidence that he/she participated in (and was convicted of) a crime based upon conduct involved in the allegations here against the defendant"]). In a case where the court concludes that a factual dispute exists as to whether the witness is an accomplice under the statute, the factual question is left for the jury to resolve (*see People v Vataj*, 69 NY2d 985, 987 [1987]; *People v Dorler*, 53 NY2d 831, 832-833 [1981]; *People v Arce*, 42 NY2d 179, 186 [1977]; *People v Basch*, 36 NY2d 154, 157 [1975]; *People v Wheatman*, 31 NY2d 12, 23 [1972]; *cf. People v Jones*, 73 NY2d 902, 903 [1989] [holding that no accomplice in fact instruction was warranted because there was no evidence from which it can be reasonably inferred that the alleged accomplice had participated in the planning or execution of the crimes]). The court must instruct the jury to apply the corroboration requirement only if the jury makes a factual finding that the witness is an accomplice in fact (*see* CJI2d[NY] Accomplice As A Question of Fact [rev Jan. 2011], available at http://www.nycourts.gov/judges/cji/1-General/CJI2d.Accomplice_Fact.pdf [accessed Mar. 9, 2014]; *see also* CPL 60.22).

We have found a witness is an accomplice as a matter of law where, for example, the witness pleads guilty to aiding the defendant in the commission of the crime (*Sweet*, 78 NY2d at 268), or otherwise confirms participation or assisting in the charged crime (*Minarich*, 46 NY2d at 971; *Beaudet*, 32 NY2d at 377-378; *Jenner*, 29 NY2d at 696).

In contrast, the witness may be found to be an accomplice in fact where there are factual disputes as to the witness's participation or intent, such that "different inferences may reasonably be drawn" from the evidence as to the witness's role as an accomplice (*Basch*, 36 NY2d at 157; *cf. Jones*, 73 NY2d at 903). The factfinder must choose which of the competing inferences to accept. For example, we have held that whether a witness is an accomplice is an issue of fact where direct proof was lacking as to the witness's participation in the crime (*Basch*, 36 NY2d at 158). This fact-sensitive determination depends on the evidence presented at trial as to the crime charged (*see e.g. id.* at 157-159; *see also Vataj*, 69 NY2d at 987). The defendant bears the burden of establishing that the witness is an accomplice (*see e.g. Basch*, 36 NY2d at 159; *see also People v Rossi*, 11 NY2d 379, 383 [1962]).

The propriety of a jury instruction is reviewable as a matter of law (*see* CPL 470.05 [2] ["For purposes of appeal, a question

of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same"]; *see also People v Medina*, 18 NY3d 98, 104 [2011], quoting *People v Gray*, 86 NY2d 10, 19 [1995]; William C. Donnino, New York Court of Appeals on Criminal Law § 10:23 at 246-247 [3d ed 2011]). We therefore review the defendant's claim for reversible error.

Here, the defendant asserts that the court improperly denied his request for an accomplice in fact instruction because there was sufficient evidence to create a factual question as to Mogavero's participation in the beating death of Merced. We agree with the defendant that the evidence adduced at trial created a question as to Mogavero's role in the crime, and therefore the trial court should have charged the jury with an accomplice in fact instruction (*see Jones*, 73 NY2d at 903 ["Where differing inferences may reasonably be drawn as to whether a witness participated in the offenses an accomplice-in-fact instruction must be given"]). Failure to do so in this case was not harmless and constitutes reversible error (*see generally People v Crimmins*, 36 NY2d 230, 241 [1975]; *see also Minarich*, 46 NY2d at 971; *Jenner*, 29 NY2d at 697; *People v Maynard*, 299 AD2d 303 [1st Dept 2002], *lv denied* 99 NY2d 630 [2003]; *People v Torres*, 160 AD2d 746 [2d Dept 1990], *lv denied* 76 NY2d 897 [1990]; *People v Conklin*, 139 AD2d 156 [3d Dept 1988], *lv denied* 72 NY2d 1044 [1988]; *People v Adams*, 185 AD2d 680 [4th Dept 1992], *lv denied* 80 NY2d 926 [1992]; *People v Pelc*, 101 AD2d 995 [4th Dept 1984]).

## IV.

Here, there is ample record evidence "from which it can be reasonably inferred" that Mogavero participated in Merced's murder, or "[a]n offense based upon the same or some of the same facts or conduct which constitute" the murder (CPL 60.22 [2]). At a minimum, "different inferences may reasonably be drawn" from Mogavero's testimony and the forensic evidence, as to Mogavero's role as an accomplice (*Basch*, 36 NY2d at 157; *cf. Jones*, 73 NY2d at 903).

Mogavero admitted to his presence before, during and after the fatal attack on Merced, and to his close proximity to Merced and the other men throughout the entire beating. He admitted to punching Merced twice, to the head and neck, which the

defendant argued could have caused or contributed to Merced's fatal injuries. This argument was supported by testimony from the forensic pathologist who admitted on cross-examination that one blow could have caused a subarachnoid hemorrhage and that a subarachnoid hemorrhage was at least one of the causes of death. The pathologist further testified that a "series of blows are considered to be all contributory to the subarachnoid hemorrhage," but that he could not say which blow actually caused the hemorrhage, and whether the first or last blows caused the greatest harm.

Mogavero also testified that he assisted in moving Merced away from the scene of the beating and that, along with Velez, he carried Merced out of the apartment and placed his body on the porch of the neighboring house. The jury could have determined that Mogavero, not the defendant, hit Merced with the mop handle. The jury also could have determined that Mogavero carried Merced to the porch to cover up the crime rather than to assist Merced, as Mogavero claimed. Moreover, the jury could have considered, as evidence of Mogavero's consciousness of guilt, his testimony that he went with the defendant to the defendant's home immediately after seeing defendant beat Merced with a mop handle, changed out of his bloodstained clothes, put them in a garbage bag, and promptly fell asleep. Mogavero's delay in speaking to the police or talking to his parents also provided a basis for the jury to infer his involvement in the crime. That Mogavero denied participation in the actions that caused Merced's death—the beating in the apartment and the attack on the porch with the mop handle— and his assertions that his sole physical act against Merced was done in self-defense when the victim came at him "aggressively," presented disputed factual allegations which should have been left for the jury to consider in deciding whether Mogavero was an accomplice.[5]

It is in no way surprising that an accomplice would claim innocence of criminal conduct or seek to minimize or distinguish the significance of the accomplice's actions from those of the defendant (*Sweet*, 78 NY2d at 267). After all, a witness implicated in criminal action may be less than truthful about his or her own involvement and may aggrandize the criminal conduct of

---

**5.** Moreover, the jury could have accepted as true the defendant's statement that Clarke warned the defendant and Mogavero to go into hiding, suggesting that the undisputed main assailant with respect to the beating, Clarke, considered Mogavero to be a culpable participant in the murder.

others in an effort to deflect scrutiny and avoid prosecution (*see Sweet*, 78 NY2d at 267; *Berger*, 52 NY2d at 219; *Cona*, 49 NY2d at 35-36).

## V.

■ The People argue that even if the evidence supported a jury instruction on accomplice in fact, any error was harmless because there was "extensive" corroboration of Mogavero's testimony and overwhelming evidence of the defendant's guilt. However, the record does not support this argument because, although the People presented corroborative evidence, the jury could have discounted the witness's testimony, determined he was not credible, and found the remaining evidence insufficient to find defendant guilty beyond a reasonable doubt. Thus, failure to instruct the jury to consider whether Mogavero was an accomplice was not harmless.

The quantum of evidence necessary to satisfy the statutory corroboration requirement is "enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (*People v Reome*, 15 NY3d 188, 192 [2010], quoting *People v Dixon*, 231 NY 111, 116 [1921]). The required corroboration need not prove the defendant's guilt (*Reome*, 15 NY3d at 192), and it may be based on evidence that sufficiently harmonizes with the accomplice testimony so as to "furnish the necessary connection between defendant and the crime" (*id.* at 194, quoting *Dixon*, 231 NY at 116-117). Nevertheless, we have stated that corroborative evidence is such that when "read with the accomplice's testimony, makes it more likely that the defendant committed the offense, and thus tends to connect him to it" (*Reome*, 15 NY3d at 194).

In this case, the proof of defendant's guilt was not overwhelming for harmless error purposes. Mogavero was the People's eyewitness to the defendant's participation in the events in the apartment. It was Mogavero's narrative, describing how the defendant joined Clarke and Velez in attacking Merced, that the People presented as evidence to the jury. It was Mogavero, and Mogavero alone, who identified the defendant as a participant in the beating. The People introduced the defendant's statement to the police as a corroborating narrative of the incident, but this evidence contradicted Mogavero's version of the defendant's conduct. The defendant's statement described that he was present during the beating and urinated on Merced, but it

did not contain a single admission that the defendant struck Merced in the apartment. Instead, the defendant's statement, like Mogavero's testimony, identified Clarke as the individual who stomped on Merced and threw a speaker on his head.

The defendant's statement aligns in some ways with Mogavero's testimony that the defendant was present during the beating and urinated on Merced when he was on the floor, but, in other ways, that version conflicted with Mogavero's testimony of the beating. Mogavero's version, in which he detailed that the defendant, along with Clarke and Velez, inflicted upon Merced a "barrage of punches and kicks," was in direct contrast with the defendant's version. Significantly, on cross-examination, Mogavero admitted that his written and signed statement to the police lacked any reference to the defendant as having hit Merced during the beating in the apartment. Mogavero's testimony that despite its absence from the written statement he did inform the police that the defendant beat Merced, and once he discovered that the statement was incomplete he sought to correct it, only further illustrates that Mogavero's version was in dispute, and constituted evidence for the jury to consider in determining whether to believe Mogavero or the defendant (*see Arce*, 42 NY2d at 186; *Basch*, 36 NY2d at 157; *see also Sweet*, 78 NY2d at 266).

The People contend that Mogavero's testimony that the defendant struck Merced three times with a mop handle after Mogavero carried Merced to the porch was corroborated by the evidence of the bruises on the body, the mop pieces found near Merced, and the defendant's single fingerprint lifted off the mop handle. However, the parties heavily contested the proper inferences to be drawn from this evidence, including whether the mop was used in any attack, and, if so, who swung the mop, and whether Merced's death was caused by blows from the mop.

The defendant disputed that he forcefully hit Merced with the mop handle and that Mogavero actually observed him strike Merced in such a way as to injure him. In his written statement to the police the defendant described how he picked up the mop handle and poked Merced "three or four times" to see "if he was all right"; actions not meant to harm Merced. During cross-examination of Mogavero, the defense challenged Mogavero's testimony that he was in fact able to see the defendant swing the mop handle from where Mogavero was standing, or that he could measure the force used. While the fingerprint evidence confirmed that the defendant held the mop handle, it did not

necessarily compel a finding that the defendant swung the mop handle or struck Merced with it. Further, as the People's witness testified, because the other four fingerprints lifted from the mop handle lacked comparison value, meaning that they could not be tested to identify who if anyone else touched the handle, the fingerprint evidence failed to exclude Mogavero as someone who may have held the mop. By his own testimony, Mogavero admitted he went to the porch on two occasions, when he could have struck Merced.

The forensic evidence established that Merced suffered a beating occasioned by multiple blows. Nevertheless, the pathologist testified that he could not say which blow eventually caused his death, and that Merced might have been conscious even after the fatal blow had been inflicted. On cross-examination Mogavero admitted that he did not know if Merced was breathing and did not take his pulse when he put him on the porch. Thus, assuming the attack with the mop handle occurred as Mogavero described it, whether that attack was the cause of death was in factual dispute.

It is certainly possible that the jury, properly charged on whether to treat Mogavero as an accomplice, and, if so, how to consider his testimony, could have discounted his version of the beating and the attack on the porch. In that case, it was for the jury to decide whether the remaining evidence established the defendant's guilt beyond a reasonable doubt. Where the jury could have chosen to discount the testimony of the People's eyewitness and the proof of defendant's guilt was not overwhelming, it cannot be said that the failure to properly charge the jury was harmless error.

The order of the Appellate Division should be reversed and the indictment dismissed as to defendant, with leave to the People, if they be so advised, to resubmit the charge of manslaughter in the first degree to a grand jury (*see People v Mayo*, 48 NY2d 245 [1979]).

PIGOTT, J. (dissenting). I concur in the majority's holding that the trial court erred in failing to issue the accomplice-in-fact instruction, because there was a reasonable view of the evidence that Mogavero "participated in an offense based upon *some* of the same facts or conduct which ma[d]e up the offense on trial" (*People v Berger*, 52 NY2d 214, 219 [1981]). In my view, however, that error was harmless because there was sufficient corroborating evidence tending to connect defendant to the commission

of the crime and overwhelming evidence of his guilt.The "corroborative evidence" required by CPL 60.22 (1) "need not be powerful in itself" (*People v Reome*, 15 NY3d 188, 191 [2010]). The requirement is met if the evidence " 'tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth' " (*id*. at 191-192, quoting *People v Dixon*, 231 NY 111, 116 [1921]). Corroborative evidence is only necessary to "connect the defendant with the commission of the crime, not to prove that he committed it. The accomplice testimony, if credited by the jury, may serve the latter purpose" (*Reome*, 15 NY3d at 192 [citation and internal quotation marks omitted]). Even if the accomplice's testimony does not, by itself, incriminate the defendant, corroboration may be supplied by proof that "harmoniz[es]" or "supports" that testimony (*id*. at 194).

The majority acknowledges that "the People presented corroborative evidence," but asserts that the jury could have discounted Mogavero's testimony, "determined he was not credible and, found the remaining evidence insufficient to find defendant guilty beyond a reasonable doubt" (majority op at 27). I disagree. Not only did the People independently establish that defendant's fingerprint and the victim's blood were on the mop handle—the object that Mogavero claimed defendant struck the victim with—they also established that the victim's blood was on one of the mop-head fragments that had been scattered around the porch where the victim was found, thereby corroborating Mogavero's testimony that defendant struck the victim in the head with the mop handle. Police also located a mop fragment in a bush near the porch approximately 8 to 10 feet away from the porch steps, supporting Mogavero's testimony that defendant was swinging the mop handle like a baseball bat.

Defendant did not deny possessing the mop, telling police in a statement that was read to the jury that he used the handle to "poke" the victim to determine if he was conscious. The jury was, of course, free to reject that explanation, particularly in light of the trial testimony that the mop handle was bent. In addition, the People's medical examiner testified with a reasonable degree of medical certainty that the "linear patterns" and bruises on the victim's jawline, chest, shoulder and arm could have been caused by the mop handle.

The compelling forensic evidence that defendant deliberately and brutally attacked the victim with the mop handle evinced defendant's intent to seriously injure the victim and lent

credence to Mogavero's testimony that, earlier in the night, while he was in Velez's apartment, defendant participated in a similarly vicious assault on the victim with the same intent. Thus, even absent the requested jury instruction, the evidence presented at trial overwhelmingly established defendant's guilt and I would therefore affirm the conviction.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and SMITH concur with Judge RIVERA; Judge PIGOTT dissents and votes to affirm in an opinion in which Judge ABDUS-SALAAM concurs.

Order reversed and the indictment as to defendant dismissed, with leave to the People, if they be so advised, to resubmit the charge of manslaughter in the first degree to a grand jury.