*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   April 14, 2016                    106863
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                   MEMORANDUM AND ORDER

MUJAHID SMITH,
                        Appellant.
_____

Calendar Date:   February 18, 2016

Before:  Peters, P.J., Garry, Rose and Devine, JJ.

_____

        Torrance L. Schmitz, Vestal, for appellant.

        Palmer J. Pelella, Special Prosecutor, Binghamton, for
respondent.

_____

Devine, J.

        Appeal from a judgment of the County Court of Broome County
(Smith, J.), rendered May 21, 2014, convicting defendant
following a nonjury trial of the crimes of criminal possession of
a forged instrument in the second degree and conspiracy in the
fifth degree.

        In August 2012, Brittany Krisko attempted to negotiate a
fake check drawn on the account of a local charity.  The ensuing
investigation suggested that defendant and his significant other,
Shanika Cooper, were behind the check-cashing scheme.  Defendant
was accordingly charged in an indictment with criminal possession
of a forged instrument in the second degree and conspiracy in the
fifth degree and, following a bench trial, he was convicted as
charged.  County Court sentenced him, as a second felony

offender, to an aggregate prison term of 3 to 6 years. Defendant now appeals, and we affirm.

Defendant first points out that he "may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect . . . defendant with the commission of such offense" and argues that the testimony of two purported accomplices, Krisko and Yvonne Scott, was insufficiently corroborated (CPL 60.22 [1]; see People v Sage, 23 NY3d 16, 23 [2014]).[1] Assuming without deciding that both women were shown to be accomplices (see People v Sage, 23 NY3d at 23-24), the corroboration requirement is not demanding and does not require compelling proof of defendant's guilt (see People v Reome, 15 NY3d 188, 191-192 [2010]; People v Godallah, 132 AD3d 1146, 1149 [2015]). Instead, the People need only come forward with evidence that "tends to connect . . . defendant with the commission of the crime in such a way as may reasonably satisfy the [trier of fact] that the accomplice[s] [are] telling the truth" (People v Reome, 15 NY3d at 192 [internal quotation marks and citation omitted]).

Scott and Krisko have family connections and lived in the same house at the time of the offense. Scott was friendly with Cooper who, in turn, had worked for the charity. Cooper asked Krisko to cash the check because she had a bank account, and Krisko agreed to do so upon the understanding that she and Scott would receive money in return for her assistance. Krisko, Scott, Cooper and defendant then drove to the bank together. It was in the car that Krisko first saw the check, which was made out to Oraine Dawkins for $4,800 and was apparently endorsed by him. Defendant told Krisko that Dawkins was a friend of his and that the check came from the Federal Emergency Management Agency, a story that made Krisko nervous when she realized that the check was drawn on the charity's account. Krisko watched defendant write under the endorsement and make the check payable to her,

_____

[1] County Court rejected defendant's contentions in this regard, but it is unclear whether the court determined that one or both of the witnesses were not accomplices, or that the People had satisfied the corroboration requirement.

after which she endorsed the check herself and went into the bank to deposit it. She then exchanged telephone numbers with defendant so that she could contact him when the check cleared. The two spoke by telephone the next day, and Krisko reported that defendant "sounded irritated" that the check had not cleared yet. Krisko and Scott were contacted by a detective in the employ of the Broome County Sheriff's Office after it became clear that the check was fake. At the detective's request, one of the women called the number provided by defendant, told the man who answered that they had the money, and arranged a meeting at a nearby store. Krisko and Scott went to the store at the appointed time and saw a man who, from a distance, appeared to be defendant. They left the store and alerted investigators, who briefly detained the man before confirming that he was not defendant.

The People submitted a variety of proof beyond the testimony of Krisko and Scott that tended to connect defendant to the charged offenses and gave reason to believe that their accounts were accurate. For example, shortly before the events at issue, the charity had issued Cooper a check with the account information contained on the forged check, and that check had never been cashed. Defendant made statements to investigators, admitted into evidence, in which he confirmed that he had traveled to the bank with the three other women on the day in question. The detective who dealt with Krisko and Scott testified and detailed the events surrounding the meeting at the store.[2] Dawkins also testified at the trial, stating that he had never seen the check before and had not signed it. Dawkins stated that he had been incarcerated for several years and knew defendant from when they were jailed together in 2009, and denied knowing Cooper. He further provided a motive for defendant to

_____

[2]    The detective was out of the country at the time of trial and, upon the People's successful application, underwent a conditional examination prior to trial (see CPL art 660). Inasmuch as defendant consented to the conditional examination of the detective, he will not now be heard to complain of it (see e.g. People v Rhodes, 91 AD3d 1185, 1187 [2012], lv denied 19 NY3d 966 [2012]).

falsely implicate him in the forgery scheme, namely, that the two had a falling out and were no longer on speaking terms.  In our view, the foregoing "sufficiently connected defendant to the commission of the crimes to satisfy the corroboration requirement of CPL 60.22 (1)" (People v Giguere, 261 AD2d 941, 941 [1999], lv denied 93 NY2d 1018 [1999]; see People v Shelby, 111 AD2d 1038, 1039 [1985], lv denied 66 NY2d 618 [1985]).

Defendant lastly argues that the verdict was against the weight of the evidence and, as such, we "independently 'weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions' . . . , and endeavor to determine 'whether [County Court] was justified in finding the defendant guilty beyond a reasonable doubt'" (People v Simmons, 135 AD3d 1193, 1195 [2016], quoting People v Danielson, 9 NY3d 342, 348 [2007]).  The check was indisputably forged, and defendant only asserts that the People failed to demonstrate that he was aware of that fact. That being said, defendant took the lead in convincing Krisko to cash a forged check, and his girlfriend had recently obtained the account information replicated on that check.  The forged check was made out to and purportedly signed by an incarcerated man whom defendant knew and disliked, and defendant thereafter acted as the point of contact for the efforts to collect the proceeds. "Guilty knowledge of forgery may be shown circumstantially by conduct and events" and, according deference to the determination of County Court that the foregoing proof was credible, we find that the verdict was supported by the weight of the evidence (People v Johnson, 65 NY2d 556, 561 [1985]; see People v Rebollo, 107 AD3d 1059, 1060-1061 [2013]; People v Martinez, 105 AD2d 873, 874 [1984]).

Peters, P.J., Garry and Rose, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court