People v Lockley (2021 NY Slip Op 06192)





People v Lockley


2021 NY Slip Op 06192


Decided on November 10, 2021


Appellate Division, Second Department


Chambers, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 10, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
CHERYL E. CHAMBERS
VALERIE BRATHWAITE NELSON
LINDA CHRISTOPHER, JJ.


[*1]The People of the State of New York, respondent,
v
Troy Lockley, appellant. Patricia Pazner, New York, NY (Michael Arthus of counsel), for appellant. Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Sharon Y. Brodt, and Nancy Fitzpatrick Talcott of counsel), for respondent.



Application Appeal by the defendant from a judgment of the Supreme Court (Michael Aloise, J.), rendered June 12, 2014, in Queens County, convicting him of murder in the second degree (two counts), burglary in the first degree, attempted robbery in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.






CHAMBERS, J.

The main issue raised on this appeal is whether the defendant's Sixth Amendment right to confrontation was violated when the People introduced the testimony of a law enforcement officer, who recounted statements made to him by a nontestifying accomplice directly implicating the defendant in the charged crimes. We answer in the affirmative.
On August 21, 2003, the murder victim, Fabian Ceballos, and his friend, Danielle Torgesen, went to the movies. Afterward, the two picked up some food and returned to the victim's residence, where they ate. Just past midnight, Torgesen went outside to smoke a cigarette, when two unknown individuals approached her, one of whom was a black male, about 5'8" to 5'9" and 170 pounds, with braids "[d]own his neck area," who was also smoking a cigarette. Torgesen indicated that the black male pulled out a gun and ran past her into the victim's home with the cigarette still in his hand, while the second individual, a male Indian, blocked Torgesen's path. Shortly thereafter, Torgesen heard a gunshot, and the Indian male then directed Torgesen to go inside, where she saw the victim lying on the ground near the front door. After rummaging through the residence for a few minutes looking for money and valuables, the black male looked over toward the victim and said "oh shit, I think he's dead. Let's get out of here" and the two suspects fled.
Torgesen later told the police that the black male had been smoking a cigarette, and the detective who interviewed her returned to the murder scene later that day to look for a discarded cigarette. He found one underneath the couch near the front door, just a few feet from where the victim's body was found.
A criminalist employed by the Office of the Chief Medical Examiner tested the cigarette butt recovered from the crime scene for human DNA. After three unsuccessful attempts to generate a DNA profile from two separate cuttings of the cigarette butt, a fourth attempt—made after concentrating the remaining extract from the second cutting—generated a single male DNA profile, which was later matched to the defendant's profile.
The jury convicted the defendant of felony murder and various related offenses.
Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's identity as the perpetrator beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348-349), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe their demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant's contention that his prior acquittal of intentional murder precluded his retrial for felony murder lacks merit (see generally Blockburger v United States, 284 US 299, 304; Matter of Suarez v Byrne, 10 NY3d 523, 532; see also People v Leonti, 18 NY2d 384, 391-392; People v Wade, 146 AD2d 589, 590).
The defendant failed to preserve for appellate review his contention that he was deprived of his right to an impartial jury by improper remarks made by the Supreme Court to prospective jurors during voir dire (see CPL 470.05[2]; People v Delvalle, 172 AD3d 1090, 1091). In any event, while some of the court's remarks were inappropriate (see People v Delvalle, 172 AD3d at [*2]1091; People v Freire, 168 AD3d 973; People v Phipps, 168 AD3d 881; People v Lamb, 164 AD3d 1470; People v Williams, 164 AD3d 842; People v Wilson, 163 AD3d 881; People v Poullard, 159 AD3d 924; People v Poullard, 159 AD3d 923; People v Luna, 158 AD3d 727; People v Prokop, 155 AD3d 975; People v Porter, 153 AD3d 857; People v Gomez, 153 AD3d 724; People v Dudley, 151 AD3d 878; People v Sutton, 151 AD3d 763; People v Mason, 132 AD3d 777), they do not warrant reversal. However, we express our strong disapproval of the court's conduct in directing prospective jurors not to "change [their] mind[s]" about their ability to be fair upon further questioning on this topic by counsel.
Nevertheless, the judgment must be reversed and a new trial ordered because the Supreme Court impermissibly allowed the People, through a police witness, to present a statement made to law enforcement officials by the nontestifying accomplice which directly implicated the defendant in the charged crimes (see Crawford v Washington, 541 US 36; People v Hardy, 4 NY3d 192).
Specifically, in their opening statement, the People announced that the jury "will hear how after being confronted with the fact that a male Indian who had been spoken to by the police and said he's the one who did this, you will hear what [the defendant's] reaction was to that" (emphasis added).
At trial, a detective testified, in relevant part, that he confronted the defendant with what he "had learned from several sources," including that the defendant and others had gone to the victim's residence prior to the night of the murder and had approached him while he was outside smoking a cigarette, but then left the scene after the victim retreated inside the house. The detective further told the defendant that he "knew" that the defendant had gone back to the scene with a man named Andy Dabydeen on the night of the murder, that the defendant pulled out a gun and forced the victim into the house while Dabydeen restrained a girl outside, that a shot rang out shortly thereafter, and that Dabydeen brought the girl into the house and the victim was then lying on the floor. After the defendant continued to deny any involvement in the murder, the detective confronted him by saying that "Andy had told us what had happened." The detective further testified that, shortly thereafter, upon returning from the bathroom, the defendant reacted to that information by stating that he could not believe that Dabydeen had "snitched" on him.
During the detective's cross-examination, defense counsel twice attempted to cast doubt on Dabydeen's statement by asking the detective whether Dabydeen had denied being present at the victim's home on the day of the shooting. The Supreme Court sustained objections to both questions.
Finally, during the People's summation, the prosecutor re-emphasized the detective's testimony that Dabydeen had told the police "that [the defendant] was the one that went in and shot this guy," and that the defendant reacted by saying he could not believe Dabydeen had "snitched" on him (emphasis added).
As a threshold matter, the People correctly point out that defense counsel did not object to the detective's testimony. However, after the People rested, the defendant himself objected to the People's failure to call Dabydeen, arguing that he had the right to confront his accuser—even specifically citing Crawford v Washington (541 US 36). The Supreme Court denied the defendant's application by telling him that the People "produce who they want to produce and . . . call who they want to call."
Contrary to the People's contention, we find that the defendant's objection—albeit made after the detective had finished testifying and the People had rested—was sufficiently specific to draw the Supreme Court's attention to the Sixth Amendment Confrontation Clause problems attendant to the People's use, as part of their case-in-chief, of Dabydeen's out-of-court testimonial statement directly implicating the defendant in the murder. "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not" (Crawford v Washington, 541 US at 51). Here, the jury had recently heard evidence of Dabydeen's statement through the detective's testimony. Thus, there [*3]was a clear evidentiary basis in the record for the defendant's invocation of Crawford—even through the court failed to see it. In any event, to the extent the specific Crawford claim advanced by the defendant on appeal was not fully preserved, we nevertheless reach it in the interest of justice.
At the outset, the People contend that there is no proof that Dabydeen actually made any statement to law enforcement officials, and suggest that the detective made up the statement out of whole cloth as a ruse to confront the defendant and get him to confess. This contention lacks merit, as the prosecution never disavowed at trial that Dabydeen had made the statement. To the contrary, the People emphasized the sum and substance of Dabydeen's statement both in their opening statement as well as in summation (see Orlando v Nassau County Dist. Attorney's Off., 915 F3d 113, 123 [2d Cir]).
Alternatively, the People contend that Dabydeen's statement was never introduced for its truth, but only to illustrate the defendant's reaction to it (see People v Churaman, 184 AD3d 852; People v Santos, 150 AD3d 1270, 1272; People v Ewell, 12 AD3d 616, 617). Even assuming, arguendo, that this was the People's intent, the jury was never informed that they could not consider Dabydeen's statement for its truth. This is especially problematic considering that the People sought to introduce Dabydeen's statement as part of their case-in-chief—as was made clear from the People's opening statement. In other words, this is not a case in which prejudicial hearsay testimony was inadvertently elicited from a prosecution witness (see People v Morales, 262 AD2d 202, 202-203). Rather, the People unquestionably intended to introduce Dabydeen's statement through the detective's testimony, and did so without even seeking an instruction telling jurors not to consider Dabydeen's statement for its truth (see People v Reynoso, 2 NY3d 820). We need not decide whether a curative instruction in this case would have been sufficient to avoid a Crawford error under the circumstances presented (compare Orlando v Nassau County Dist. Attorney's Off., 915 F3d at 121, with People v Reynoso, 2 NY3d 820), and express no views on this question.
This is not to suggest that the People are precluded from giving some context to the defendant's statement that Dabydeen had "snitched" on him. We merely emphasize that the People could have done so without disclosing the substance of Dabydeen's incriminating statement (compare Orlando v Nassau County Dist. Attorney's Off., 915 F3d at 125-126, with Tennessee v Street, 471 US 409, 415-416).
Moreover, we cannot conclude that the error was harmless beyond a reasonable doubt. Although the People presented a very strong circumstantial case, Dabydeen's statement was the only direct evidence linking the defendant to the murder—a critical fact that Torgesen herself could not supply. Under these circumstances, we cannot conclude that there is no reasonable possibility that the statement contributed to the jury's guilty verdict (see People v Johnson, 27 NY3d 60, 73).
In light of our determination, we need not reach the defendant's remaining contentions.
MASTRO, J.P., BRATHWAITE NELSON and CHRISTOPHER, JJ., concur.
ORDERED that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.
ENTER: Maria T. Fasulo
Acting Clerk of the Court