People v Alvarenga (2023 NY Slip Op 03704)

People v Alvarenga

2023 NY Slip Op 03704

Decided on July 5, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 5, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
ANGELA G. IANNACCI
LINDA CHRISTOPHER
HELEN VOUTSINAS, JJ.

2019-14108
 (Ind. No. 2324/17)

[*1]The People of the State of New York, respondent,
v
Jose M. Alvarenga, appellant.

Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill and Amanda Iannuzzi of counsel), for respondent.
Patricia Pazner, New York, NY (Cynthia Colt of counsel), for appellant.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Michael Aloise, J.), rendered November 20, 2019, convicting him of murder in the second degree and criminal possession of a weapon in the second degree (two counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Queens County, for a new trial.
In 2017, Fernando Gonzalez Chavez was shot one time in the chest and died shortly thereafter as a result. Approximately two months later, police officers arrested the defendant, Roberto Abrego (hereinafter Roberto), and Brenda Alvarado-Merino (hereinafter Brenda), at the house where they lived together. The defendant, Roberto, Brenda, and Chavez were all members of the same gang. The defendant was subsequently charged with murder in the second degree and criminal possession of a weapon in the second degree (two counts), and the matter proceeded to a jury trial.
At trial, the People relied principally on Brenda's testimony. There was no physical or eyewitness evidence connecting the defendant to the shooting. Brenda testified, in substance, that before Chavez was killed, Roberto had been in communication with another gang member over the telephone. Roberto told Brenda "to get ready" and thereafter she, Roberto, and the defendant left their residence and traveled together by car to Queens. During the trip, the defendant used a slang phrase suggesting that he was going to kill someone. After their arrival, the defendant, whom Brenda knew to be armed, got out of the car and returned "six[ or] seven minutes" later stating, among other things, that "he didn't know if he had hit him." Later that day, the defendant purportedly made additional admissions to Brenda about the killing.
During the direct examination of Brenda, the People inquired if she knew whether Roberto had pleaded guilty "for his role in this incident" and she confirmed that he had, without objection from defense counsel. The People then asked Brenda if Roberto had entered into a cooperation agreement, which she also confirmed, and the written agreement was admitted into evidence, again without objection. The People did not call Roberto as a witness to testify.
The People rested and the defendant did not present a case. Defense counsel did not [*2]request, and the Supreme Court did not provide, an accomplice corroboration instruction to the jury regarding Brenda's testimony. After deliberations, the jury returned a guilty verdict on each of the three counts and the court subsequently imposed sentence. The defendant appeals.
The defendant contends that he was deprived of the effective assistance of counsel in light of various errors committed by his counsel during the trial. To demonstrate ineffective assistance of counsel under the United States Constitution, the defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (Strickland v Washington, 466 US 668, 688, 694). "Under the New York Constitution, [i]n determining whether a defendant has been deprived of effective assistance, a court must examine whether the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Sposito, 37 NY3d 1149, 1150 [internal quotation marks omitted]; see People v Wright, 25 NY3d 769, 779). The state standard for effective assistance "is ultimately concerned with the fairness of the process as a whole rather than its particular impact on the outcome of the case" (People v Benevento, 91 NY2d 708, 714; see People v Wright, 25 NY3d at 779).
Upon our review of the totality of the record herein, we conclude that the cumulative effect of trial counsel's errors deprived the defendant of the effective assistance of counsel (see People v Wright, 25 NY3d at 779; People v Ramos, 194 AD3d 964, 965).
First, defense counsel failed to object to evidence elicited by the People pertaining to the guilty plea of Roberto, a nontestifying alleged accomplice, including the introduction into evidence of the cooperation agreement in which Roberto agreed to give "meaningful and truthful information" concerning the shooting. The admission of this evidence violated the defendant's Sixth Amendment right to confront the witnesses against him (see US Const 6th Amend; Crawford v Washington, 541 US 36, 59, 64; People v Hardy, 4 NY3d 192, 198; People v Wheeler, 62 NY2d 867, 869; People v White, 24 AD3d 801, 802), and was prejudicial, particularly in light of the paucity of direct evidence connecting the defendant to the shooting, the prosecutor's summation comments regarding this improperly admitted evidence, and the lack of any limiting instructions (see People v Hardy, 4 NY3d at 198-199; People v White, 24 AD3d at 802).
Additionally, defense counsel failed to request either an accomplice-in-law or accomplice-in-fact jury instruction with respect to Brenda's testimony. Since accomplice testimony is "marked by obvious self-interest," a defendant "'may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense'" (People v Sage, 23 NY3d 16, 23, quoting CPL 60.22[1]). An accomplice is "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in: (a) [t]he offense charged; or (b) [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged" (CPL 60.22[2]; see People v Sage, 23 NY3d at 23). "[T]he corroboration statute's definition of an accomplice differs significantly from the Penal Law section that provides for accomplice criminal liability," such that "even though a witness is not liable criminally as an accomplice for the offense being tried, the witness may be an accomplice for corroboration purposes" (People v Berger, 52 NY2d 214, 219).
Here, at a minimum, in light of the evidence presented, there were factual disputes as to Brenda's participation or intent, "such that different inferences [might have] reasonably [been] drawn from the evidence as to [her] role as an accomplice" (People v Sage, 23 NY3d at 24 [internal quotation marks omitted]). Nevertheless, no accomplice-in-fact instruction was requested or given so as to guide the jury in properly evaluating the testimony of the People's principal witness.
Finally, while the People advised defense counsel during the course of the trial that they would not be calling Roberto—who would have been expected to provide material, noncumulative testimony favorable to the People and had, in fact, agreed to do so in a cooperation agreement—defense counsel failed to timely request a missing witness charge (see People v Carr, 14 NY3d 808, 809; see generally People v Kitching, 78 NY2d 532, 536-537; People v Marsalis, 22 AD3d 866, 868). Defense counsel's belated request for such a charge was denied.
The cumulative effect of these errors was to deprive the defendant of meaningful representation by his trial counsel, and thus, we must reverse the judgment and remit the matter to the Supreme Court, Queens County, for a new trial.
Since we are remitting the matter for a new trial, we note that the Supreme Court erred during voir dire in directing prospective jurors not to "go changing [their] mind[s]" about their ability to be fair upon questioning by the attorneys, and in indicating to prospective jurors that it was "irrelevant" to the court "what [their] feelings [were] about the police department" (see People v Lockley, 200 AD3d 117, 120; People v Delvalle, 172 AD3d 1090, 1091). We admonish the court not to make these or similar statements to prospective jurors upon retrial.
In light of our determination, we need not reach the defendant's remaining contentions.
DUFFY, J.P., IANNACCI, CHRISTOPHER and VOUTSINAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court