Appeal by the defendant from a judgment of the Supreme Court, Queens County (Kohm, J.), rendered February 27, 2009, convicting him of assault in the first degree and burglary in the second degree, upon a jury verdict, and imposing sentence.
Ordered that the judgment is reversed, as a matter of discretion in the interest of justice, and the matter is remitted to the Supreme Court, Queens County, for a new trial.
On appeal, the defendant contends, inter alia, that the trial court erred in failing to instruct the jury with an accomplice-corroboration charge. We agree. Although the defendant did not preserve this claim for appellate review by requesting such a charge, or objecting to the jury charge as given (see CPL 470.05 [2]; People v Lipton, 54 NY2d 340, 351 [1981]; People v Kennedy, 78 AD3d 1233, 1236 [2010]), under the circumstances of this case, we reach the issue as a matter of discretion in the interest of justice. Reversal is also warranted because the trial court permitted the prosecutor to cross-examine the defendant’s alibi *989 witness, without first having laid the proper foundation about her failure to come forward with exculpatory information at an earlier date (see People v Dawson, 50 NY2d 311 [1980]). Although this contention is also unpreserved for appellate review, under the circumstances of this case, we review it as a matter of discretion in the interest of justice. These errors were not harmless, as the proof of the defendant’s guilt was not overwhelming (see People v Figueroa, 181 AD2d 690 [1992]; cf. People v Jara, 212 AD2d 636 [1995]).
The defendant was convicted of assault in the first degree and burglary in the second degree following a jury trial. The charges in this case arose out of a single incident, in which the defendant, along with three others, allegedly assaulted the victim after unlawfully entering his Queens apartment. At trial, the only witness to identify the defendant as one of the individuals involved was a witness who had spent part of the afternoon before the incident in the Bronx with the four alleged assailants. Notably, the victim himself also testified on behalf of the People, but stated that he did not know the defendant and could not identify him as one of the men who committed the crimes.
The witness testified at trial that she was an acquaintance of the defendant, and had accompanied the four alleged assailants to the victim’s apartment that evening. She stated that the five of them drove in two vehicles to the victim’s residence so she could facilitate a marijuana purchase. She was aware that one of the alleged assailants other than the defendant was carrying a gun. After parking around the corner from the victim’s apartment building, the group of five entered the building and approached the apartment, and the witness rang the doorbell. The victim’s girlfriend responded to the doorbell. Upon learning from the victim’s girlfriend that the victim was asleep, the group of five departed and walked back to their two cars. At that point, one of the members of the group remarked in a frustrated and aggressive tone that he “didn’t come from the Bronx for nothing.”
The group of five briefly walked to a gas station and, shortly thereafter, returned to the victim’s apartment. According to the witness, she was told that they wanted to return so that one of the members of the group could leave his telephone number with the victim’s girlfriend. The witness stated that, upon returning to the victim’s apartment, she approached the front door, with her four companions positioned on the side of the *990 door in a manner whereby they could not be seen by the person answering the door. The victim’s girlfriend opened the door, and agreed to take the telephone number. As the girlfriend was closing the door, one of the witness’s four companions other than the defendant prevented the door from being closed, and gestured for the witness to walk away, which she did. The four alleged assailants rushed in. The witness explained that, as she was walking down the block and was approximately four houses away from the victim’s apartment building, she heard gunshots, and believed that her four companions were still in the apartment. She saw two of the companions run out of the apartment, and believed that the defendant was still inside. The witness called a friend to pick her up, returned home, and was thereafter taken into custody by the police.
As for the defendant’s first claim on appeal, “[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense” (CPL 60.22 [1]; see People v Montefusco, 44 AD3d 879, 880 [2007]). A witness in a criminal action is an accomplice if he or she “may reasonably be considered to have participated in either the offense charged or an offense based upon the same or some of the same facts or conduct which constitute the offense charged” (People v Caban, 5 NY3d 143, 154 [2005] [internal quotation marks omitted]; see CPL 60.22 [2] [a], [b]). Further, a witness who is a criminal facilitator is an accomplice for corroboration purposes (see People v Basch, 36 NY2d 154, 158 [1975]; People v Lumnah, 81 AD3d 1175, 1176 [2011]). The factual issue of whether a particular witness is an accomplice should be submitted to the jury if different inferences may reasonably be drawn from the proof regarding complicity (see People v Basch, 36 NY2d at 157; People v Correa, 88 AD3d 810, 811 [2011]).
Here, the witness’s testimony was unsupported by corroborative evidence tending to connect the defendant with the commission of the charged offenses. Further, contrary to the People’s contention, an inference could have reasonably been drawn from the evidence that the witness either participated in or facilitated the offenses charged. Specifically, she testified that she was aware that one of the members of the group had been carrying a gun, and that, upon being turned away from the victim’s apartment on the first occasion, one of the members remarked in a frustrated and aggressive tone that he “didn’t *991 come from the Bronx for nothing.” Then, upon returning to the victim’s apartment a second time, when she went to ring the doorbell, her four male companions were positioned to the side of the door and could not be seen by the person answering the door. This evidence was susceptible of more than one interpretation, and the Supreme Court erred in failing to instruct the jury to determine whether the witness was an accomplice (see People v Cirigliano, 15 AD3d 672, 673 [2005]; People v Catter, 237 AD2d 526, 527 [1997]).
As for the defendant’s second claim on appeal, as part of his case, the defendant presented the testimony of an alibi witness. She testified that she was unemployed but worked as a community organizer, that she had previously started a foundation that advocated for families of victims of violence, and had contacts at the District Attorney’s office. She further testified, in pertinent part, that on the night in question, she had driven to the victim’s neighborhood to pick her brother up from work. She first encountered the defendant when she stopped her car to ask him about his vehicle’s sound system. That evening was the first time she had ever met the defendant. She exited her car, they walked and spoke briefly, and the defendant gave her his brother’s telephone number in case she wished to inquire about sound systems further. They went separate ways and, less than one minute after leaving the defendant’s company, she heard shots fired and saw the defendant running. Her testimony was, in effect, that the defendant could not have been involved in the offense because he was with her up until nearly the moment before the shots were heard.
On cross-examination, the prosecutor questioned the alibi witness about her failure to come forward with exculpatory information to the police or the District Attorney’s office in light of her involvement as a community organizer. The prosecutor also made certain comments during summation, in effect, emphasizing that she was not believable due to her failure to communicate this information to law enforcement.
“[T]here is nothing inherently improper about cross-examining a defense witness concerning his [or her] failure to come forward [with exculpatory information] at an earlier date” (People v Dawson, 50 NY2d at 321), as long as a proper foundation for this type of cross-examination has been laid by showing that the witness “(i) was aware of the nature of the charge pending against the defendant; (ii) had reason to recognize that he or she possessed exculpatory information; (iii) had a reasonable motive for acting to exonerate the defendant; and (iv) was *992 familiar with the means of making such information available to law enforcement authorities” (People v Miller, 89 NY2d 1077, 1079 [1997]; see People v Dawson, 50 NY2d at 321 n 4; People v Stokes, 282 AD2d 553 [2001]).
Here, the trial court erred in allowing the prosecutor to impeach the alibi witness’s credibility by virtue of her prior silence as to certain exculpatory information concerning the defendant, without having first laid this proper foundation (see People v Dawson, 50 NY2d 311 [1980]; People v Jara, 212 AD2d 636 [1995]; cf. People v Wright, 62 AD3d 916, 918 [2009]). Although the prosecutor arguably laid a proper foundation that the alibi witness was familiar with the means to make such information available to law enforcement authorities due to her community activism and contacts at the District Attorney’s office, the prosecution failed to establish that she had been aware of any charges pending against the defendant, or that she had reason to recognize that she possessed exculpatory information, since she testified, in effect, that she did not believe the defendant was involved in any matter involving the gunshots that she heard. Furthermore, the prosecution failed to establish that she had a reasonable motive for acting to exonerate the defendant, as she testified that she had first met him that evening (see People v Morris, 100 AD2d 600 [1984]). Additionally, the prosecutor’s summation went beyond the bounds of fair advocacy in frequently characterizing the alibi witness, in effect, as having a flawed moral character, and being generally unworthy of belief (see People v Dawson, 50 NY2d at 317-318; see also People v Figueroa, 181 AD2d at 692).
The defendant’s remaining contention has been rendered academic in light of our determination. Accordingly, the judgment must be reversed, and the matter remitted to the Supreme Court, Queens County, for a new trial. Skelos, J.P., Florio, Belen and Sgroi, JJ., concur.