[999 NE2d 1117, 977 NYS2d 672]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARYL
H., Appellant.

Argued September 9, 2013; decided October 10, 2013

**POINTS OF COUNSEL**

*Barbara J. Davies, Chief Attorney, The Legal Aid Bureau of Buffalo, Inc.*, Buffalo (*Kristin M. Preve* and *David C. Schopp* of

counsel), for appellant. I. The trial court's erroneous ruling involving Dr. Dori Marshall deprived appellant of his federal and state constitutional rights to present a defense, to confront witnesses, and to a fair trial, necessitating the reversal of his conviction. (*People v Goldstein*, 6 NY3d 119; *Crawford v Washington*, 541 US 36; *Davis v Alaska*, 415 US 308; *Chambers v Mississippi*, 410 US 284; *Pointer v Texas*, 380 US 400; *Brady v Maryland*, 373 US 83; *People v Gissendanner*, 48 NY2d 543; *People v Rosario*, 9 NY2d 286; *People v Jones*, 73 NY2d 427; *People v Swan*, 158 AD2d 158.) II. The trial court's erroneous evidentiary ruling involving the complainant's father deprived appellant of his federal and state constitutional rights to present a defense, to confront witnesses, and to a fair trial, necessitating the reversal of his conviction. (*People v Poole*, 55 AD3d 1349; *People v Garcia*, 47 AD3d 830; *People v Ocampo*, 28 AD3d 684; *People v Szwec*, 271 AD2d 322; *People v Corby*, 6 NY3d 231; *People v Chin*, 67 NY2d 22; *People v Halter*, 19 NY3d 1046; *Chapman v California*, 386 US 18; *People v Crimmins*, 36 NY2d 230; *Delaware v Van Arsdall*, 475 US 673.)

*Frank A. Sedita, III, District Attorney*, Buffalo (*Matthew B. Powers* and *Donna A. Milling* of counsel), for respondent. I. Defendant's claim that the trial court's ruling denied him his right to cross-examine an expert concerning the validity of her opinion, as well as his right to confront witnesses and present a defense, is belied by the record and otherwise harmless. (*People v Williams*, 81 NY2d 303; *People v Bowen*, 67 AD3d 1022, 14 NY3d 769; *Crane v Kentucky*, 476 US 683; *People v Miller*, 91 NY2d 372; *People v Cronin*, 60 NY2d 430; *People v Sugden*, 35 NY2d 453; *People v Bornholdt*, 33 NY2d 75; *People v Crimmins*, 36 NY2d 230; *People v Silver*, 33 NY2d 475.) II. Defendant's claim that the trial court denied him his right to confront witnesses, to present a defense, and to a fair trial is unpreserved, meritless and harmless. (*People v Martin*, 50 NY2d 1029; *People v Gray*, 86 NY2d 10; *People v Hawkins*, 11 NY3d 484; *People v Prado*, 4 NY3d 725; *People v Williams*, 81 NY2d 303; *People v Bowen*, 67 AD3d 1022, 14 NY3d 769; *People v Aska*, 91 NY2d 979; *People v Miller*, 39 NY2d 543; *People v Crimmins*, 36 NY2d 230.)

## OPINION OF THE COURT

RIVERA, J.

Defendant Daryl H. contests his conviction for assault in the first and second degrees, based on allegedly improper evidentiary trial rulings. The Appellate Division modified, vacating the

second degree assault conviction on other grounds, and, as modified, affirmed (96 AD3d 1482 [2012]). We now affirm the order of the Appellate Division.

Defendant was a patient in the psychiatric ward of the Erie County Medical Center (ECMC) when he assaulted and severely injured another psychiatric patient, Darren W. The two men were in the television lounge one evening when defendant became angry at Darren W. and then proceeded to hit him, and kick him in the head while he was lying on the floor, to the point of rendering Darren W. motionless.

Three nurses observed the altercation and sounded an alarm after they unsuccessfully tried to intervene. Hospital staff responded to the alarm and escorted defendant to his room. There, he recounted the events surrounding the altercation to a psychiatry resident. Later that night, in response to another alarm, hospital staff found defendant yelling and swearing. A nurse eventually coaxed him into receiving an intravenous shot of antipsychotic medication.

The next morning, defendant met with Dr. Dori Marshall, who evaluated him to determine whether he posed a safety risk to himself or others. He told her that he had been in a fight and that the "other person deserved it." In response to her questions about whether he knew what happened to people who assaulted others, he responded "you can be arrested" but contended that he would not be arrested because of his schizophrenia. Upon completion of her interview, Dr. Marshall called the ECMC Police and asked them to arrest defendant. An officer waited with defendant until the Buffalo Police arrived to take him into custody. Dr. Marshall prepared a discharge report describing her findings about defendant's mental state and recommending his arrest. She later gave a deposition recounting these events.

Based on the attack, defendant was charged with attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]) and assault in the first and second degrees (Penal Law §§ 120.10 [1]; 120.05 [1]). During the bench trial, Dr. Marshall testified about her interview with defendant. The testimony became the subject of several objections by both parties, with both sides receiving their share of favorable and unfavorable rulings. Initially, the People sought to elicit opinion evidence from her regarding defendant's mental capacity during the course of the interview. However, Supreme Court sustained defense counsel's objection that defendant's mental capacity the day following the

incident was irrelevant. Dr. Marshall then testified as to statements made by defendant. The People again sought to elicit opinion evidence and Supreme Court again sustained defense counsel's objection.

During cross-examination of Dr. Marshall, defense counsel sought to ask her about the sources for her discharge report. The court sustained the People's objection on the grounds of hearsay. The court stated that Dr. Marshall's report was not inconsistent with her trial testimony and therefore could not be used for impeachment purposes. Defense counsel, however, elicited testimony about Dr. Marshall's evaluation of defendant, including her recommendation to arrest him. She stated that she based her recommendation in part on her direct observations of the injury sustained by Darren W. and her assessment of defendant's capacity to understand his actions.

The People then asked Dr. Marshall on redirect about her assessment of defendant. Over defense counsel's objections, the court permitted this line of questioning because defense counsel had "opened the door" during cross-examination. Dr. Marshall then stated that if she had determined that defendant failed to respond to her questions, or was not oriented, or otherwise appeared psychotic, she would have treated him with medications, but that was not the case. She also stated that she would not have advocated for his arrest if she thought he lacked capacity.

The People also presented testimony of Darren W.'s father, who testified to his son's injuries and identified him in photographs entered into evidence. On cross-examination, the People objected to defense counsel's attempts to question the father about his civil lawsuit against the County of Erie arising out of his son's injuries. In support of the proposed questions, defense counsel argued that he was making an offer of proof that the witness "feels that there's some wrongdoing on the part of ECMC in addition to my client." The court sustained the objection.

Defendant testified on his own behalf and stated that he is a diagnosed paranoid schizophrenic who sees demons and devils. He stated that he had been involuntarily hospitalized in the past and cannot find work. He then described how he had admitted himself at the ECMC because he had been seeing demons, unable to sleep, and off his medication. He described the altercation in the television lounge, stating that he responded to threatening statements and racial epithets lodged against him

by Darren W. after defendant objected to Darren W. changing the television channel.

Defendant presented testimony from his psychiatric expert, Dr. Joseph, who testified that he knew defendant and had treated him in 2009. He testified defendant suffered from paranoid schizophrenia, characterized by quick mood changes, hostile and aggressive behavior, and unpredictable psychotic episodes. Dr. Joseph opined that it was unlikely defendant knew what he was doing during the altercation, concluding "the man is sick, he's dangerously mentally ill. . . . He's not a criminal. He's still sick."

The People presented rebuttal testimony from psychiatrist Dr. Horowitz, who opined that defendant did not lack the capacity to appreciate his conduct during the altercation. Dr. Horowitz based his determination on defendant's psychiatric records and his interview of defendant. He also relied on statements by hospital staff and Dr. Marshall establishing that defendant could recount with clarity the events surrounding the attack.

The court convicted defendant of assault in the first and second degrees. On appeal, the Appellate Division modified by vacating the second degree assault conviction on grounds unrelated to the current appeal, and, as modified, affirmed.* With respect to the evidentiary rulings that are the basis of the appeal before us, the Appellate Division rejected defendant's claims that the Supreme Court's evidentiary rulings deprived him of a fair trial.

On appeal to this Court, defendant argues that Supreme Court's rulings limiting his examination of Dr. Marshall and Darren W.'s father denied him his federal and state constitutional rights to present a defense, to confront witnesses, and to a fair trial. We conclude that the Appellate Division properly concluded that defendant's challenges to the rulings are without merit.

With respect to Dr. Marshall, defendant characterizes her as a de facto expert witness who gave an opinion as to his capacity. Defendant argues that the court improperly foreclosed defense counsel from probing the basis of her opinion at trial. He also argues that he should have been permitted to impeach Dr. Marshall's expert testimony by reference to her discharge report and deposition.

---

* The Appellate Division vacated defendant's conviction for assault in the second degree because it was a lesser included offense of assault in the first degree and should have been charged in the alternative to that crime.

■ Defendant is correct that he would have been entitled to probe the basis of Dr. Marshall's opinion at the outset of cross-examination if she had offered one on direct examination (CPL 60.55 [1]; *People v Jones*, 73 NY2d 427, 430 [1989]). However, as the record establishes, the court limited the People's direct examination of Dr. Marshall to facts: defendant's admissions to her during the interview and the events leading up to his arrest. On direct examination, the court prevented Dr. Marshall from giving opinion testimony, including her assessment of defendant's capacity at the time of his arrest. Dr. Marshall gave no opinion testimony, and defendant was not denied the opportunity to explore the basis of such testimony during cross-examination.

Moreover, defense counsel's attempts to question the doctor with respect to her deposition and discharge report were properly rebuffed because, as a fact witness, any prior statements by her could only be admissible if inconsistent with her in-court statements. Supreme Court found they were not inconsistent, and defendant presents no reason to upset that finding on appeal.

Eventually, defense counsel did elicit testimony from Dr. Marshall regarding defendant's capacity to appreciate his conduct. On cross-examination, Dr. Marshall admitted that her recommendation to arrest defendant relied, in part, on her assessment of his capacity. Her responses constituted opinion testimony, which defense counsel could have probed. However, counsel did not. During redirect, the People properly asked Dr. Marshall to elaborate her assessment. Nonetheless, during re-cross-examination, counsel did not pursue the hearsay basis for the capacity assessment. Under these circumstances, defendant cannot now seek to complain about the lost opportunity to explore opinion testimony occasioned by his counsel, and not by the court's rulings.

■ Defendant incorrectly argues that this case presents a permutation of our decision in *People v Goldstein* (6 NY3d 119 [2005]). In *Goldstein* a psychiatric expert repeated to the jury out-of-court, testimonial statements made by acquaintances of the defendant. We held that introducing those statements implicated the Confrontation Clause of the Sixth Amendment of the Federal Constitution (*id.* at 127-129). We also raised the question of when, if ever, an expert may introduce the hearsay basis of opinion testimony (*id.* at 126-127). Here, Dr. Marshall did not introduce any hearsay statements, and testified that she

based her capacity assessment of defendant on her interview with him. Thus, her testimony did not implicate the Confrontation Clause, and her opinion did not provide an illicit "conduit for hearsay" (*id.* at 126). Indeed, defense counsel successfully precluded such hearsay during the People's direct examination.

■ Defendant's challenge to his examination of Darren W.'s father is also unavailing. Defendant argues that Supreme Court should have permitted defense counsel to cross-examine Darren W.'s father about his pending lawsuit in order to establish bias and thus impeach the witness. This challenge is unpreserved because it was not made with specificity before the trial court (*People v Hawkins*, 11 NY3d 484, 492 [2008]; *People v Hines*, 97 NY2d 56, 62 [2001]; *People v Goode*, 87 NY2d 1045, 1047 [1996]; *People v Gray*, 86 NY2d 10, 19 [1995]; *People v Cona*, 49 NY2d 26, 33 [1979]). Defense counsel's proffer referred specifically to the father's lawsuit as evidence that the father thought the hospital bore some responsibility for his son's injuries. No interpretation of this objection can encompass a line of questioning to reveal witness bias (*Hawkins*, 11 NY3d at 492; *Gray*, 86 NY2d at 19-21; *Cona*, 49 NY2d at 33).

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and ABDUS-SALAAM concur.

Order affirmed.