■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER L. ANDERSON, Appellant. [987 NYS2d 681]—

Stein, J.P. Appeal from a judgment of the County Court of Columbia County (Nichols, J.), rendered August 15, 2012, upon a verdict convicting defendant of the crimes of robbery in the first degree, burglary in the first degree (four counts), burglary in the second degree, criminal possession of a weapon in the second degree (two counts) and criminal possession of a weapon in the third degree.

Over the course of three days in January 2012, there were three separate home invasions in Columbia County, the last of which occurred during the early morning hours of January 12 when David Chrapowitzky and Barbara Chrapowitzky woke up in their home and saw intruders. After the intruders left, the Chrapowitzkys called 911, described them as two males, one of whom was wearing a mask and the other a bandana across his face, and both wearing black hooded sweatshirts. Both of the men were armed and, after they exited the house, the Chrapowitzkys heard a vehicle leaving. Donald Krapf, a sergeant with the Columbia County Sheriff's Department, responded to the 911 call and, while traveling to the residence, observed a suspicious vehicle. Krapf kept the vehicle in his view for a few minutes and was eventually able to see that defendant—who was driving—was wearing a black hooded sweatshirt. Krapf also observed the vehicle turn without a directional signal being employed and effectuated a traffic stop of the vehicle, which was occupied by defendant and four others, including Jeremy Bost and Joshua Spencer. Bost was asked to exit the vehicle and a pat down revealed two guns in the waistband of his pants. Physical evidence linking defendant to the three burglaries was found in the vehicle and, later, in defendant's residence.

Defendant, Bost and Spencer were arrested and were each charged in an indictment with burglary in the first degree (four counts), criminal possession of a weapon in the second degree (two counts), criminal possession of weapon in the third degree,

robbery in the first degree and burglary in the second degree. Following a suppression hearing, County Court determined that Krapf had probable cause to stop defendant's vehicle and refused to suppress the evidence seized as a result thereof. County Court subsequently severed defendant's trial from his codefendants' trial and defendant was convicted by a jury as charged. Defendant was sentenced, as a second violent felony offender, to an aggregate prison term of 80 years, to be followed by five years of postrelease supervision. Defendant now appeals, and we affirm.

Initially, we reject defendant's claim that County Court failed to acquire personal jurisdiction over him because he was not arraigned in accordance with the statutory requirements (*see* CPL 210.15 [1]). Defendant was present at the arraignment, during which his counsel waived a formal reading of the charges, acknowledged receipt of the indictment and entered a plea of not guilty on each and every count therein. Thus, the statutory requirements were satisfied (*see* CPL 210.15; *People v Oakley*, 112 AD3d 1064, 1064 [2013], *lv denied* 22 NY3d 1140 [2014]; *People v Buckner*, 274 AD2d 832, 833 [2000], *lv denied* 95 NY2d 904 [2000]).

We also find no merit to defendant's contention that County Court should have suppressed the evidence derived from the traffic stop. Probable cause to believe that a person has violated a provision of the Vehicle and Traffic Law provides an " 'objectively reasonable basis' " for the stop of a vehicle (*People v Brock*, 107 AD3d 1025, 1026 [2013], *lv denied* 21 NY3d 1072 [2013], quoting *People v Pealer*, 20 NY3d 447, 457 n 2 [2013], *cert denied* 571 US —, 134 S Ct 105 [2013]; *see People v Thompson*, 106 AD3d 1134, 1135 [2013]; *People v McLean*, 99 AD3d 1111, 1111-1112 [2012], *lv denied* 20 NY3d 1013 [2013]; *People v Viele*, 90 AD3d 1238, 1239 [2011], *lv denied* 19 NY3d 868 [2012]; *People v Green*, 80 AD3d 1004, 1004-1005 [2011]). Here, Krapf testified at the probable cause hearing that, as he was responding to the 911 call, he observed defendant's vehicle fail to signal when it made a left-hand turn (*see* Vehicle and Traffic Law § 1163 [d]).[1] County Court assessed that testimony as credible, and the objective reasonableness of the stop was not negated by any subjective intention that Krapf might have had in connection with his desire to investigate the possibility that

---

1. Krapf also testified that his partner issued uniform traffic tickets to defendant. While defendant points to the absence of such tickets from the record, we note that, even if no tickets had been issued, it would not have "render[ed] the otherwise lawful traffic stop illegal" (*People v Ross*, 106 AD3d 1194, 1195 [2013], *lv denied* 22 NY3d 1090 [2014]).

the occupants of the vehicle were involved in that evening's burglary (*see People v McLean,* 99 AD3d at 1112; *People v Viele,* 90 AD3d at 1239). Krapf also observed the vehicle—which was the only one on the road—in close geographical and temporal proximity to the scene of the reported crime, as well as the fact that defendant was wearing clothing that matched the description of the perpetrators and that another occupant in the car was moving suspiciously. Based on this testimony, and according deference to County Court's credibility assessments, we discern no basis to disturb that court's finding that there was probable cause to stop defendant's vehicle.

We turn next to defendant's argument that the jury's verdict was against the weight of the evidence because the People failed to prove beyond a reasonable doubt his identity as a perpetrator in the home invasions. Shortly after the burglary at the Chrapowitzky home, defendant was seen driving a vehicle in a nearby location wearing clothing that matched the description of the perpetrator. Certain items linked to the three burglaries were found in the vehicle and Bost had two guns in his waistband. Also, the Chrapowitzkys and Edrick King, one of the victims of the first burglary, identified those guns as the weapons that were used by the perpetrators, and Lucas Samascott, the victim of the second burglary, identified items found in the vehicle and at defendant's residence as items that had been taken from his home.[2] Additionally, the Chrapowitzkys were able to make an in-court identification of defendant as one of the two perpetrators, and David Chrapowitzky identified the mask found in defendant's vehicle as the mask worn by one of the intruders. Finally, King identified a black jacket that was later found in defendant's jail locker as the jacket that was worn by the shorter of the two intruders at his home.

Catrina Lewis, who was in the vehicle with defendant, Bost and Spencer on all three occasions, testified that, each time, the vehicle stopped at a house, the three men got out of the vehicle and returned a short time later. Lewis also testified that during the first incident, the three men returned carrying a bag, which they later threw out of the window. That bag was recovered and the other victim of the first burglary identified it as a bag belonging to him that had been taken from his home. Shaeancye Anthony-Lewis, who was also in the car after the last home invasion, testified that she saw defendant hand a weapon to Bost. In addition, the People proffered evidence that both of the weapons recovered on Bost were operable, and that defendant had previously been convicted of a felony.

---

2. Samascott was not home when the burglary occurred.

Although defendant challenges the credibility of Lewis and Anthony-Lewis, as well as the victims' descriptions of the perpetrators, the identification of the weapons and the in-court identification of defendant by the Chrapowitzkys, these issues were fully explored at trial and presented a credibility issue for the jury to resolve. Thus, while a different verdict would not have been unreasonable, when we view the evidence in a neutral light and defer to the jury's superior position to determine witness credibility, we are satisfied that the verdict as to each of the charges was in accord with the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Perry*, 116 AD3d 1253, 1255 [2014]; *People v Ferrer*, 113 AD3d 964, 965 [2014]; *People v Woodrow*, 91 AD3d 1188, 1190 [2012], *lv denied* 18 NY3d 999 [2012]).

We are also unpersuaded by defendant's claim that reversal is required due to a variety of trial errors. Initially, defendant contends that the People's failure to turn over the video recorded questioning of King, as well as handwritten notes of that questioning taken by the investigator, constituted a *Brady/ Rosario* violation that warranted dismissal of the charges relating to King. The District Attorney revealed that he had just learned of the existence of the investigator's notes and the video recording at the conclusion of King's trial testimony. After viewing these items outside the presence of the jury, defendant's counsel objected to the late disclosure and requested, as a sanction, that the three relevant counts of the indictment be dismissed. Defendant's counsel declined County Court's offers to amend his opening statement and to present the video recording to the jury, but did reopen his cross-examination of King to question him regarding the inconsistencies between his pretrial statements and his trial testimony concerning various aspects of his description of the perpetrators.

While we agree that the People's failure to timely disclose the aforementioned evidence constituted a *Brady* and/or *Rosario* violation, defendant failed to show "a reasonable possibility that the result at trial would have been different if the materials had been timely disclosed" (*People v Williams*, 50 AD3d 1177, 1180 [2008]; *see* CPL 240.45 [1] [a]; *People v Dawson*, 110 AD3d 1350, 1352 [2013]), particularly considering the remedies made available to defendant by County Court. Under these circumstances, County Court's refusal to sanction the People by dismissing those counts in the indictment was a provident exercise of its discretion (*see People v Williams*, 7 NY3d 15, 19 [2006]; *People v Jenkins*, 98 NY2d 280, 284 [2002]).

Nor did County Court err by precluding defendant from call-

ing as a witness the investigator who questioned King. Following the close of the People's case, defendant's counsel disclosed that he intended to call the investigator regarding the statements that King made to him. Although defendant contends that the investigator's testimony was offered to impeach King's testimony with regard to his description of the perpetrators of the crime, King admitted on cross-examination that he told the investigator that he had thought one of the men in his residence had a Spanish accent and might have been a person he knew named Fernando. Thus, to this extent, King's testimony was not inconsistent with the offer of proof regarding the investigator's testimony (*see People v Hamm*, 96 AD3d 1482, 1483 [2012], *affd* 21 NY3d 708 [2013]). Moreover, to the extent that King's trial testimony regarding his description of the height of the perpetrators differed from what he told the investigator, defendant's counsel was able to challenge the alleged inconsistencies of King's description through the reopened cross-examination and declined County Court's offer to play the video recording of King's interview with the investigator for the jury. Under these circumstances, we discern no abuse of the court's discretion in precluding the investigator's testimony.

Contrary to defendant's assertion, we also conclude that County Court properly denied his request to charge the jury that Lewis and Anthony-Lewis were accomplices whose testimony required corroboration connecting defendant to the commission of the crimes (*see* CPL 60.22 [1]; *compare People v Medeiros*, 116 AD3d 1096, 1097-1098 [2014]). For the purposes of the corroboration requirement, an accomplice is defined as a person who "may reasonably be considered to have participated in . . . [t]he offense charged; or . . . [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged" (CPL 60.22 [2]; *see People v Sage*, 23 NY3d 16, 23 [2014]; *People v Medeiros*, 116 AD3d at 1097-1098). "Thus, to be an accomplice for corroboration purposes, the witness 'must somehow be criminally implicated and potentially subject to prosecution for the conduct or factual transaction related to the crimes for which the defendant is on trial' " (*People v Medeiros*, 116 AD3d at 1098, quoting *People v Adams*, 307 AD2d 475, 476 [2003], *lv denied* 1 NY3d 566 [2003]).

Notwithstanding the fact that both Lewis and Anthony-Lewis were arrested and charged with conspiracy in the fourth degree,[3] when we consider the evidence presented at trial with respect to

---

**3.** There is nothing in the record indicating the disposition of these charges.

the extent of their involvement (*see People v Sage*, 23 NY3d 16, 24 [2014]), neither met the definition of an accomplice (*compare People v Shelton*, 98 AD3d 988, 990-991 [2012]). Lewis's testimony reveals that her involvement was limited to her presence in the vehicle when defendant, Bost and Spencer traveled to the victims' residences and, similarly, Anthony-Lewis was merely present in the vehicle when the last home invasion occurred. Their presence in the vehicle, alone, was insufficient to qualify them as accomplices (*see People v Tucker*, 72 NY2d 849, 850 [1988]; *compare People v Sweet*, 78 NY2d 263, 265-266 [1991]), and we find no error in County Court's refusal to charge the jury as such.

In any event, even if the evidence adduced at trial created a factual question as to Lewis's and Anthony-Lewis's participation requiring County Court to provide the jury with an accomplice-in-fact instruction, the failure to do so would have been harmless error, as there is ample evidence corroborating their testimony which "tends to connect . . . defendant with the commission of the crime[s] in such a way as may reasonably satisfy the jury that [they were] telling the truth" (*People v Reome*, 15 NY3d 188, 192 [2010]; *see People v Reed*, 115 AD3d 1334, 1336 [2014]; *compare People v Sage*, 23 NY3d 16, 27 [2014]). Among other things, defendant's presence in the vehicle, the recovery of the guns from Bost's waistband, the identification of defendant's jacket by King, the in-court identification of defendant by the Chrapowitzkys, David Chrapowitzky's identification of the mask found in defendant's vehicle, and the recovery of the stolen items from defendant's residence sufficiently corroborated the testimony of Lewis and Anthony-Lewis (*see People v Jones*, 111 AD3d 1148, 1150 [2013]).

To the extent not specially addressed herein, defendant's remaining contentions have been considered and are unavailing.

McCarthy, Rose and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.