*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   October 30, 2014                    106274
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                          MEMORANDUM AND ORDER

JOSE A. RODRIGUEZ,
                        Appellant.
_____

Calendar Date:   September 12, 2014

Before:   Peters, P.J., Stein, Garry, Egan Jr. and Clark, JJ.

_____

        Matthew C. Hug, Troy, for appellant.

        John M. Muehl, District Attorney, Cooperstown (Michael F.
Getman of counsel), for respondent.

_____

Garry, J.

        Appeal from a judgment of the County Court of Otsego County
(Burns, J.), rendered December 22, 2011, upon a verdict
convicting defendant of the crimes of operating as a major
trafficker and criminal sale of a controlled substance in the
third degree (four counts).

        Following a lengthy police investigation, defendant, a
resident of the Bronx, was charged with various crimes arising
out of his alleged management of a heroin distribution ring in
Otsego County.  He was tried by a jury and convicted of the crime
of operating as a major trafficker, as well as four counts of

criminal sale of a controlled substance in the third degree.[1]
County Court denied defendant's motion to set aside the verdict
and sentenced him to a prison term of 20 years with five years of
postrelease supervision on the major trafficking count and four
five-year prison terms, each with three years of postrelease
supervision, on the criminal sale counts, all sentences to be
served consecutively.  Defendant appeals.

Defendant contends that his convictions were not supported
by legally sufficient evidence and were against the weight of the
evidence, basing these arguments primarily upon the claim that
the People relied upon inadequately corroborated accomplice
testimony.  As an initial matter, the corroboration argument is
preserved only as to the charge of operating as a major
trafficker, as defendant specifically raised that claim when he
moved to dismiss the trafficking charge at the close of proof,
but did not include it in his more general motion to dismiss the
other charges (see People v Gray, 86 NY2d 10, 19 [1995]; People v
Hilliard, 49 AD3d 910, 912 [2008], lv denied 10 NY3d 959 [2008]).
Nevertheless, in assessing defendant's claim that all of his
convictions are against the weight of the evidence, this Court
necessarily determines whether each element of the crimes was
proven beyond a reasonable doubt (see People v Danielson, 9 NY3d
342, 348-349 [2007]; People v Gaudiosi, 110 AD3d 1347, 1348
[2013], lv denied 22 NY3d 1040 [2013]).

Penal Law § 220.77, which established the crime of
operating as a major trafficker, was enacted as part of the Drug
Law Reform Act of 2009 (see L 2009, ch 56, part AAA, § 29; see
generally William C. Donnino, Practice Commentary, McKinney's
Cons Laws of NY, Book 39, Penal Law § 220.77, 2014 Pocket Part at
122-125).  As pertinent here, a person commits the crime of
operating as a major trafficker when he or she "acts as a
director of a controlled substance organization" during a period
of 12 months or less in which the organization sells a controlled

---

[1]  Defendant was charged with seven additional counts of
criminal sale of a controlled substance in the third degree, but
County Court dismissed one of these charges prior to the close of
proof, and the jury acquitted defendant of the remainder.

substance or substances, and the proceeds due or collected from such sales have a total value of at least $75,000 (Penal Law § 220.77 [1]). A controlled substance organization is defined as "four or more persons sharing a common purpose to engage in conduct that constitutes or advances the commission of a felony under [Penal Law article 220]" (Penal Law § 220.00 [18]), and a director is "the principal administrator, organizer[] or leader" of such an organization, or one of several such persons (Penal Law § 220.00 [19]).

The People sought to prove that defendant acted as the director of a controlled substance organization for the requisite time period by presenting the testimony of a number of witnesses who had allegedly purchased heroin from defendant and/or worked for him by selling, distributing and delivering heroin, in addition to other testimony.[2] The broad outline of the operation revealed by the testimony was that defendant – located in New York City and using the nickname "Flip" instead of his real name – used throw-away cell phones with numbers that frequently changed to maintain contact with numerous individuals in the City of Oneonta, Otsego County, who followed his directions to sell

---

[2] At the close of proof, defense counsel pointed out that the indictment alleged that defendant operated as a major trafficker from September 1, 2009 to September 1, 2010, but Penal Law § 220.77 did not take effect until November 1, 2009. Accordingly, County Court instructed the jury to base its determination of the trafficking charge only upon evidence of acts transpiring between November 1, 2009 and September 1, 2010. As there was no objection to this charge, defendant's contention that the instruction was impermissible was not preserved (see CPL 470.05 [2]; People v Green, 119 AD3d 23, 30 [2014], lv denied 23 NY3d 1062 [2014]; People v Williams, 28 AD3d 1005, 1009 [2006], lv denied 7 NY3d 819 [2006]). In any event, we would have found no error, as the instruction neither altered the theory of the prosecution nor prejudiced defendant on the merits (see People v Charles, 61 NY2d 321, 328-329 [1984]; People v Ardrey, 92 AD3d 967, 970-971 [2012], lv denied 19 NY3d 861 [2012]; People v Dorfeuille, 91 AD3d 1023, 1024 [2012], lv denied 19 NY3d 996 [2012]).

heroin that he supplied to purchasers in that city, and who were paid for their efforts with heroin to support their drug habits. Oneonta narcotics detectives Branden Collison and Christopher Witzenburg testified to describe their lengthy investigation into defendant's Oneonta heroin operation, their encounters with the various witnesses and defendant's ultimate arrest. A confidential informant (hereinafter CI) testified that he cooperated with Collison by performing several controlled buys involving heroin supplied by defendant, including one in June 2010.

A female witness testified that before 2009, she had obtained heroin for her personal use by calling defendant — whom she knew as Flip — on a cell phone; he would then direct her to varying locations in Oneonta where she would be met by persons working for defendant who provided her with heroin and accepted her payments. In 2009, she began working for defendant in exchange for payments of heroin, and continued to do so "for a year and a half . . . almost two years" until she was arrested in February 2010. In this capacity, she received phone calls from defendant in which he told her where to meet buyers whom she would supply with heroin that she had obtained from defendant, either by traveling to New York City to pick it up or by receiving it from individuals who transported it from New York City at defendant's direction. This witness testified that she made at least 40 or 50 trips to New York City, generally met defendant at hotels in the Bronx, took between $2,000 and $5,000 in heroin payments to him on each trip and returned with 20 or 30 "bundles" of heroin for sale in Oneonta.[3] She also sometimes wired money to defendant via Western Union, using names and New York City addresses that he furnished. She testified that, during this period, she sold an average of 80 to 100 bags of heroin daily at $20 per bag; based on this testimony, the jury could have found that she sold over $150,000 worth of heroin at defendant's behest between November 2009 and February 2010.

---

[3] A "bundle" of heroin was described in the course of other testimony as being comprised of 10 small glassine bags.

A second female witness testified that she worked for defendant, whom she knew as Flip, during an 18-month period ending with her arrest in June 2010, by making approximately 30 to 40 trips to New York City to obtain heroin, meeting defendant or persons working for him at hotels in the Bronx, and transporting 10 to 20 bundles of heroin back to Oneonta after each trip. She stated that she did not handle money during these trips, which was carried by others with whom she traveled, including the first female witness. However, she said that she wired money on several occasions to defendant using Bronx addresses that he provided. This witness testified that she also acted as an intermediary for heroin buyers in Oneonta by calling defendant on their behalf and then following his instructions as to where to meet his agents to complete the sale. She testified that "maybe 15 different people" delivered drugs to her from defendant during these transactions, and that she was paid for her activities in heroin.

A male witness testified that he first made telephone contact with defendant — whom he knew as Flip and never met in person — in early 2010 when he called what he believed to be the cell phone number of the first female witness, seeking to buy heroin, and defendant answered the phone. Thereafter, he spoke by telephone "almost every day" for "at least a month" with defendant, who would direct him to an Oneonta location where he would meet someone who would sell him heroin. After the male witness offered to work for defendant in exchange for drugs, defendant had him pick people up at bus stations and transport them to Oneonta to sell heroin. At defendant's direction, the male witness also rented an Oneonta apartment used as a stash house, where he and other people stored heroin supplied by defendant and then sold it as defendant directed. The witness testified that the stash house arrangement lasted for several weeks until he was arrested in February 2010. During this period, the witness made approximately a dozen $8,000 to $10,000 wire transfers to New York City addresses supplied by defendant.

Contrary to defendant's claim, there was adequate corroboration for the testimony of these accomplice witnesses. A defendant may not be convicted solely on the basis of accomplice testimony that lacks the support of "corroborative evidence

tending to connect the defendant with the commission of [the charged] offense" (CPL 60.22 [1]).  Nevertheless, the People are not required to furnish independent evidence that establishes every element of the offense in question, or even a single element; instead, corroborative evidence need only "tend[] to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (People v Reome, 15 NY3d 188, 191-192 [2010] [internal quotation marks and citation omitted]; see People v Lloyd, 118 AD3d 1117, 1121 [2014]; People v Forbes, 111 AD3d 1154, 1156-1157 [2013]).  Here, the testimony of both female witnesses was corroborated by that of the narcotics detectives, who testified that they used CIs to make controlled heroin purchases from each of the women, and that these purchases were initiated by contact with defendant or his employees and conducted according to the procedures described by the witnesses. The testimony of the first male witness was corroborated by the same two detectives.  Witzenburg testified that he arrested the witness after observing what appeared to be a drug transaction at a residence in Oneonta and found 56 bags of heroin in his car. After the witness stated that additional heroin could be found in the stash house, Collison searched it and found an additional 250 bags.  Collison further determined that the stash house had been leased in the name of this witness shortly before his arrest. Corroborative evidence need not prove the commission of the crime, directly link a defendant to the crime or "lead exclusively to the inference of the defendant's guilt" (People v Medeiros, 116 AD3d 1096, 1099 [2014] [internal quotation marks and citations omitted]).  Here, the police testimony confirming certain details of defendant's alleged operation as described by the accomplices was sufficient to support a reasonable inference that he was involved and to satisfy the "minimal corroboration requirements" of CPL 60.22 (1) (People v Lloyd, 118 AD3d at 1121; see People v Matthews, 101 AD3d 1363, 1365 [2012], lvs denied 20 NY3d 1101, 1104 [2013]; People v Pagan, 97 AD3d 963, 965 [2012], lv denied 20 NY3d 934 [2012]).

Additionally, the People presented the testimony of two other witnesses who allegedly worked for defendant — whom they called Flip — by conducting heroin transactions in Oneonta.  The testimony of these two witnesses is largely irrelevant to the

trafficking charge, as they described actions occurring before November 2009. Nevertheless, among other details, these witnesses confirmed that defendant used the nickname Flip. Another male witness testified that between 2009 and approximately June 2010, while residing in the City of Albany, he assisted defendant — known to him as Flip — in expanding his heroin operation into the Albany area. This witness began the Albany operation by distributing free heroin samples furnished by defendant, and thereafter sold heroin supplied by defendant, following instructions conveyed by defendant over the phone. This witness testified that he was aware that defendant was conducting a similar operation in Oneonta, that he sometimes delivered heroin from defendant to Oneonta for use in that operation, and that he sometimes carried money from Oneonta to defendant in the Bronx. In July 2010, defendant asked this witness to relocate to Oneonta to oversee operations there. He testified that he did so, but was arrested almost immediately thereafter while trying to make a heroin sale. Defendant contends upon appeal that County Court lacked geographical jurisdiction over the activities of this witness in Albany. This issue was not preserved by an objection at trial; even if preserved, it is unclear how this would have affected the admissibility of the testimony, as defendant, not the witness, was the subject of the prosecution (see People v Banks, 38 AD3d 938, 939 [2007], lv denied 9 NY3d 840 [2007]). Contrary to defendant's claim, no Ventimiglia hearing was required, as the testimony of this witness did not address uncharged crimes or bad acts and was not introduced to suggest propensity, but was instead relevant to the charge that defendant directed a controlled substance organization in Oneonta (compare People v Brown, 114 AD3d 1017, 1019-1020 [2014]). We reject defendant's claim that his counsel was ineffective for failing to raise these issues, as a defendant is not denied the effective assistance of counsel when counsel fails to raise issues that have little or no chance of succeeding (see People v Stultz, 2 NY3d 277, 287 [2004]; People v Brock, 107 AD3d 1025, 1029 [2013], lv denied 21 NY3d 1072 [2013]).

Viewing the testimony in the light most favorable to the People, we find a valid line of reasoning and permissible inferences that could lead rational persons to the conclusion

reached by the jury (see People v Galindo, 23 NY3d 719, 724
[2014]).  The testimony as to the monetary value of the heroin
transactions during the pertinent time period – specifically, the
testimony of the first female witness as to the amounts of heroin
that she sold and, separately, that of the male witness as to the
amounts of his wire transfers – was more than adequate to satisfy
the monetary threshold of $75,000 (see Penal Law § 220.77 [1]).
Further, the testimony of the accomplice witnesses as to their
own involvement, that of defendant, and that of multiple other
persons who they testified also worked for defendant as sellers
and drug couriers in the Oneonta heroin operation was sufficient
to establish that a controlled substance organization existed
that consisted of four or more persons, each of whom shared in a
common purpose to commit drug felonies under Penal Law article
220 by selling heroin (see Penal Law § 220.00 [18]; William C.
Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book
39, Penal Law § 220.77, 2014 Pocket Part at 125).  Finally, the
witness testimony describing defendant's management of the
Oneonta operation by, among other things, supplying the heroin,
supervising and directing the workers, communicating with buyers
and sellers to schedule heroin transactions, and collecting the
proceeds sufficiently established that he was a "principal
administrator, organizer[] or leader" of the organization (Penal
Law § 220.00 [19]).  Notably, nothing in Penal Law § 220.77 (1)
requires a showing that an alleged director is the only
administrator, organizer or leader of a controlled substance
organization, nor does the statute require that he or she
personally conduct each transaction, "or perhaps even know of a
particular sale" (William C. Donnino, Practice Commentary,
McKinney's Cons Laws of NY, Book 39, Penal Law § 220.77, 2014
Pocket Part at 125).  As to defendant's contention that most of
the People's witnesses were unworthy of belief, in that they were
former heroin users who cooperated with the People in exchange
for less stringent treatment of their own illegal conduct, these
issues were vigorously explored in cross-examination, and the
jury was free to credit or discredit their testimony as it saw
fit (see People v Anderson, 118 AD3d 1138, 1142 [2014]).
Deferring to these credibility assessments and viewing the
evidence in a neutral light, we are satisfied that the verdict
convicting defendant of operating as a major drug trafficker was
in accord with the weight of the evidence (see Penal Law 220.77

[1]; see generally People v Danielson, 9 NY3d at 348-349).

Defendant's remaining four convictions for criminal sale of a controlled substance in the third degree were based on controlled heroin buys from the female witnesses and an additional unidentified seller. As to each, defendant argues that the People failed to support their theory of accomplice liability by proving beyond a reasonable doubt that defendant knowingly and unlawfully "solicit[ed], request[ed], command[ed], importun[ed] or intentionally aid[ed]" in the transactions (Penal Law § 20.00; see Penal Law § 220.39 [1]). We disagree. The first conviction was based upon a September 2009 controlled buy set up by Witzenburg, who testified that he used a CI to purchase $100 worth of heroin from the first female witness. While the female witness did not testify specifically about this transaction, she stated that she sold to the particular CI in question "quite often." The second challenged conviction involved a controlled buy involving a different CI, which was set up by Collison and took place in January 2010. The first female witness testified that she sold heroin to this CI near a school building in the Village of Cooperstown, Otsego County, and Collison confirmed that this was the location of the January 2010 purchase. Based upon the testimony of the female witness that defendant was the supplier of the heroin that she sold during the time periods in question, the jury could reasonably have inferred that defendant aided both sales by supplying the heroin (see People v Harris, 288 AD2d 610, 617 [2001], affd 99 NY2d 202 [2002]).

The third criminal sale conviction involved a May 2010 controlled buy set up by Collison, who testified that he watched a CI send a text message to the second female witness to arrange the purchase. Collison and the CI then traveled to the Oneonta home of this witness, where a third party sold heroin to the CI. The second female witness confirmed that she brokered such a deal at her home, explaining that the CI called her and asked her to contact defendant to arrange the sale, that she did so, and that defendant then sent the third party to her house — thus establishing defendant's assistance in the sale. The final count was based upon a June 2010 controlled buy, as to which a CI testified that, while sitting in Collison's car, he arranged a

heroin transaction by telephoning defendant — whose telephone number and voice he knew from previous heroin transactions — and then traveled with Collison to the location that defendant designated, where he purchased heroin from a seller whom the CI identified as Bobby Colone. Collison confirmed this account and further testified that, from the driver's seat of his car, he was able to overhear and understand defendant's side of the telephone conversation with the CI. Defense counsel vigorously challenged this testimony on cross-examination. Further, Colone testified for defendant and claimed that the transaction in question involved marihuana, rather than heroin. However, these issues presented credibility issues for the jury to resolve. According the jury's determinations appropriate deference, we find that the weight of the evidence supports all four convictions (see People v Wilson, 100 AD3d 1045, 1046 [2012], lv denied 22 NY3d 999 [2013]; People v Green, 90 AD3d 1151, 1153-1154 [2011], lv denied 18 NY3d 994 [2012]).

Defendant next contends that his sentence is harsh and excessive. However, the disparity between the sentence imposed by County Court and a shorter sentence offered by the People before trial, without more, does not demonstrate that defendant was improperly punished for exercising his right to go to trial, and nothing else in the record supports this claim or reveals any abuse of discretion or extraordinary circumstances warranting modification (see People v Acevedo, 118 AD3d 1103, 1108 [2014]; People v Olson, 110 AD3d 1373, 1377-1378 [2013], lv denied 23 NY3d 1023 [2014]). County Court was authorized to impose a maximum indeterminate life term with a minimum term of 15 to 25 years for defendant's conviction for operating as a major trafficker (see Penal Law §§ 70.00 [2] [a]; [3] [a] [i]; 70.71 [5] [b]), but instead elected to sentence defendant to a determinate term of 20 years, the maximum term permitted under this option (see Penal Law § 70.71 [2] [b] [1]; [5] [c]). The court extensively discussed its reasons for rejecting defendant's plea for leniency and imposing a lengthy sentence, including the serious harm caused by defendant's conduct to the affected individuals and the community, his failure to show remorse or insight, his extensive prior criminal history — which included a previous conviction for selling heroin in Oneonta — and his criminal character as revealed by these factors. The court

stated that its ultimate intent in imposing this lengthy sentence was to ensure that defendant would never have another opportunity to return to the community to sell heroin.

We note that in sentencing defendant to a determinate term on the trafficking conviction, County Court failed to set forth upon the record an express finding that it would have been unduly harsh to impose an indeterminate term, as required by Penal Law § 70.71 (5) (c).  Nevertheless, the only purpose that would be served by remitting for resentencing here would be "as a means of pointing out that the statute was not followed to the letter" (People v Esteves, 41 NY2d 826, 827 [1977]).  It has been held in reviewing other sentencing provisions that statutory requirements of this nature are imposed "to aid the court in focusing upon the purpose of the sentence and as a method of explaining the sentence to the public and the offender" (People v Frey, 100 AD2d 728, 728 [1984], lv denied 62 NY2d 806 [1984]; see e.g. Penal Law §§ 70.10 [2]; 70.25 [2-b]).  Here, we find that these purposes were fulfilled by the court's detailed remarks, and the record was fully adequate to permit appellate review of defendant's claim that his sentence was excessive.  Accordingly, upon the record presented, we need not vacate the sentence and remit for resentencing (see People v Rojas, 42 NY2d 1035 [1977]; People v Esteves, 41 NY2d at 827; People v Adkins, 298 AD2d 991, 991 [2002], lv denied 99 NY2d 554 [2002]; People v Riss, 58 AD2d 697, 698 [1977]).

Peters, P.J., Stein, Egan Jr. and Clark, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court