*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  May 21, 2015                    106170
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                    MEMORANDUM AND ORDER

JONATHON C. NELSON,
                    Appellant.
_____

Calendar Date:  March 25, 2015

Before:  Lahtinen, J.P., McCarthy, Garry and Lynch, JJ.

_____

        Donna C. Chin, Ithaca, for appellant.

        Weeden A. Wetmore, District Attorney, Elmira (John Thweatt
of counsel), for respondent.

_____

Lynch, J.

        Appeal from a judgment of the County Court of Chemung
County (Keene, J.), rendered July 8, 2013, upon a verdict
convicting defendant of the crimes of attempted assault in the
first degree, criminal use of a firearm in the second degree and
criminal possession of a weapon in the second degree.

        After a jury trial, defendant was convicted of the crimes
of attempted assault in the first degree, criminal use of a
firearm in the second degree and criminal possession of a weapon
in the second degree resulting from a shooting incident at an
apartment complex in November 2012.  The victim, who was shot
twice, neither identified defendant as the shooter nor testified
at the trial.  Defendant now appeals.

Defendant contends that the evidence was legally insufficient to support his convictions and the verdict was against the weight of the evidence. As to both of these arguments, we disagree. Rather, viewing the evidence in a light most favorable to the People (see People v Reed, 22 NY3d 530, 535 [2014]), we find that the evidence was legally sufficient to support the jury's verdict on each of the counts. Darlene Scott, the victim's good friend, testified at trial that she drove to the apartment complex to meet the victim and, as she waited for him in the parking lot, she saw a man with a hooded sweatshirt pulled over his head walk by her car. She next saw the victim walking towards then past her car before she heard a "thump" at the back of her car. She turned and saw the man in the hooded sweatshirt, who she could not identify, shooting at the victim as he ran through the parking lot. It was Scott who drove the victim to the hospital. Jeremy Huston, who lived in the apartment complex, testified that when he heard gun shots, he looked out his back door and saw a man wearing a hooded sweatshirt running towards his building. Huston explained that he proceeded to open his front door and he observed defendant going into his neighbor's apartment after hearing defendant say something about a shooting. Huston's neighbor, Kevin Horsey, testified that he opened his front door to find defendant, who he had seen before because he was an acquaintance of his roommate. Horsey testified that after he let defendant into the apartment, defendant showed him the gun and asked him "to hold it down for him." After initially objecting, Horsey agreed to take the gun after defendant became more forceful. After defendant left the apartment, Horsey explained that he wrapped the gun in a shirt before stuffing it in a shoe and throwing the shoe into a nearby cemetery. At trial, Horsey identified defendant as the man who gave him the gun.

Huston testified that shortly after seeing defendant enter Horsey's apartment, he saw a pink taxi arrive in the parking lot, a man exit the taxi, and defendant approaching the man while saying something about a shooting before getting in the taxicab. Contessa Stewart testified that she was driving the taxi and that she picked defendant up at the apartment complex and drove him to a convenience store, where defendant was arrested for his involvement in the shooting at the apartment complex. The jury

also heard testimony from several police officers that a bullet was recovered from the rear tire of Scott's car, that the gun was recovered from the cemetery with two bullets remaining in the magazine and one in the chamber, and that shell casings found in the parking lot were from bullets fired from the gun that was found in the cemetery.

In our view, the foregoing evidence was legally sufficient to allow the jury to conclude that defendant possessed a loaded firearm with intent to use it unlawfully against another person (see Penal Law § 265.03 [1] [b]; People v Hawkins, 110 AD3d 1242, 1242-1243 [2013], lv denied 22 NY3d 1041 [2013]), that, "[w]ith intent to cause serious physical injury to another person, he [attempted to] cause[] such injury to such person . . . by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]; see Penal Law § 110.00; People v Pine, 126 AD3d 1112, 1114) and that, during the commission of the attempted assault, he possessed a deadly, loaded weapon, "from which a shot, readily capable of producing death or other serious injury may be discharged" (Penal Law § 265.08 [1]; see People v Dixon, 62 AD3d 1036, 1038-1040 [2009], lvs denied 12 NY3d 912, 914 [2009]). Although defendant contends that the People did not submit sufficient evidence that he ever possessed a weapon, we disagree and, viewing the evidence in a light most favorable to the People, find "a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime[s] proved beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]; see People v Rodwell, 122 AD3d 1065, 1066-1067 [2014]; People v Hernandez 89 AD3d 1123, 1124-1125 [2011], lvs denied 20 NY3d 1099 [2013]; People v Dixon, 62 AD3d at 1038-1040). Further, we recognize that a different verdict would not have been unreasonable, especially because no person testified that they saw defendant shoot the victim. Nonetheless, upon consideration of the testimony in a neutral light and the rational inferences that can be drawn from the evidence, and with deference to the jury's credibility determinations, we find the verdict was supported by the weight of the evidence (see People v Danielson, 9 NY3d at 348-350; People v Estella, 107 AD3d 1029, 1031 [2013], lv denied 21 NY3d 1042 [2013]; People v McFarland, 106 AD3d 1129, 1131 [2013], lv

denied 22 NY3d 1140 [2014]; People v Hernandez, 89 AD3d at 1125).

We reject defendant's argument that County Court should have determined that Horsey was an accomplice as a matter of law. According to defendant, because Horsey was an accomplice, his testimony had to be supported by corroborative evidence that connected defendant to the crime of possession of a weapon in the second degree. "[T]o be an accomplice for corroboration purposes, the witness 'must somehow be criminally implicated and potentially subject to prosecution for the conduct or factual transaction related to the crimes for which the defendant is on trial'" (People v Anderson, 118 AD3d 1138, 1143 [2014], lv denied 24 NY3d 1117 [2015], quoting People v Medeiros, 116 AD3d 1096, 1098 [2014], lv denied 24 NY3d 1045 [2014]). Here, we agree with County Court that the evidence established that Horsey did not participate in the crime but, at most, was an accessory after the fact (see People v Jones, 73 NY2d 902, 903 [1989]; People v Colbert, 60 AD3d 1209, 1212-1213 [2009]; People v Washington, 50 AD3d 1616, 1617 [2008], lv denied 11 NY3d 796 [2008]).

We also reject defendant's argument that County Court should not have allowed the People to enter the victim's medical records into evidence. As a general rule, such evidence may be admissible under the business record exception to the hearsay rule so long as the records "reflect acts, occurrences or events that relate to diagnosis, prognosis or treatment or are otherwise helpful to an understanding of the medical or surgical aspects of . . . [the particular patient's] hospitalization" (People v Ortega, 15 NY3d 610, 617 [2010]; see People v Wright, 81 AD3d 1161, 1164 [2011], lv denied 17 NY3d 803 [2011]). Here, defendant objects to the records to the extent that there are notations indicating that the victim was shot (e.g., there was an "unknown shooter") and to the extent that they include information about his family's medical history and his living situation. In our view, there can be little doubt that the victim's family medical history was relevant to diagnosis and treatment, and that the victim's home situation (e.g., whether he lives alone, how many stairs he must climb) was relevant to discharge planning. Further, we find that whether the victim's gun shot wound was self-inflicted, accidental or inflicted by a known or unknown person was necessarily relevant to diagnosis,

treatment and discharge planning for the same reasons that a victim's assailant in a domestic violence or child abuse situation is relevant to diagnosis and treatment (see People v Ortega, 15 NY3d at 617-618). We therefore find that County Court did not err when it admitted the unredacted medical records. Having found that these statements were "germane" to treatment and diagnosis, we further reject defendant's claim that the admission of the evidence violated his constitutional right to confrontation (People v Duhs, 16 NY3d 405, 408-409 [2011]). Moreover, the reference to an "unknown shooter" in no way implicates defendant.

Finally, we reject defendant's argument that the sentence imposed, an aggregate prison term of 14 years with five years of postrelease supervision, should be reduced as harsh and excessive. Generally, we may reduce a sentence in the interest of justice where there are either extraordinary circumstances or County Court abused its discretion (see People v Miller, 113 AD3d 935, 936 [2014], lv denied 22 NY3d 1201 [2014]). Considering defendant's lengthy criminal history, including felonies involving the possession of a weapon, we discern no basis to reduce the sentence imposed here (see People v Larose, 120 AD3d 1442, 1443 [2014], lv denied 24 NY3d 1045 [2014]).

Lahtinen, J.P., McCarthy and Garry, JJ., concur.


ORDERED that the judgment is affirmed.



ENTER:

Robert D. Mayberger
Clerk of the Court